14412

McKNIGHT v. SMITH *ET AL.*

(189 S. E., 361)

*Mr. C. T. McDonald,* for petitioner.

*Mr. Sam J. Royall,* for respondents.

January 12, 1937.

The opinion of the Court was delivered by Mr. Chief Justice Stabler.

The petitioner, Ottie W. McKnight, seeks in this proceeding to have the Court by writ of certiorari review and reverse the action of the State Democratic Executive Committee in refusing to sustain petitioner's appeal from the decision of the Florence County Executive Committee in the matter of the petitioner's contest relative to the primary election held at Salem precinct, September 22, 1936, for magistrate of the Cowards-Salem district of that county.

In obedience to the writ, Hon. Ben T. Leppard, chairman of the State Committee, certified to the Court the complete record upon which that committee acted in the matter. The other respondents also made due return to the order, including the respondent Smith, who was declared by the Florence County Committee to be the successful candidate, and who is represented by counsel in this Court.

The following appears from the record: There are three primary election precincts in the Cowards-Salem magisterial district for Florence County. In the Democratic primary election, held on September 8, 1936, two candidates for magistrate were voted for in that district, Ottie W. McKnight and B. H. Smith. According to the returns, Smith received a majority of the votes cast. As the result of a contest, however, the county committee ordered a third primary for the district, with new managers at the Salem voting place, which was held, as ordered, on September 22, 1936. At this election, when the ballots cast at two of the precincts were counted, it was found that McKnight had 45 votes more than Smith, but the vote at the Salem precinct showed 57 for McKnight and 142 for Smith, thus giving Smith in the district a majority of 41. McKnight duly contested the election on several grounds, the principal one being that the ballots cast at the Salem precinct had been counted by the managers in secrecy, in violation of the rules of the party and of the statute law of the State. At the hear-

ing of the contest by the Florence County Committee, testimony was taken, in the nature of statements by different parties along with certain affidavits submitted, pertinent to the charges made by the petitioner. The county committee, by a vote of 14 to 5, declared the election valid and B. H. Smith the nominee for magistrate in the district named. It was from this decision that the petitioner McKnight appealed to the State Executive Committee, which sustained the action of the county committee by a vote of 15 to 12.

As agreed by counsel in oral argument here, the only question presented for our decision is whether the ballots cast at the Salem precinct were counted in secret. The charge is made in the verified petition in the following language:

"That after the old managers had been replaced and new ones appointed with instructions to see that the election was properly and lawfully held, the new managers, in violation of the rules and laws governing the Democratic Party, immediately after the polls were closed by them, took the ballot boxes and contents and excluded all others from the room or schoolhouse where the election was being held and proceeded, as petitioner is informed and believes, to count the votes and make their report in secrecy. That the doors were fastened and all persons excluded, save and except the managers, a deputy sheriff, and Karl Smith, who it was understood by the committee and petitioner would have nothing to do with the managing of the poll.

"That friends of petitioner and those watching for him at the place were denied admittance to the room and not permitted to see the boxes opened or the votes counted in direct violation of the rules of the Democratic Party and the laws and rules made and provided in such cases."

It is well settled that the findings of fact of an inferior Court or body will not be reviewed by this Court, on writ of certiorari, unless such findings are entirely without support in the evidence. See *Young v. Sapp,* 167 S. C., 364, 166 S. E., 354, 356, and decisions there cited. With

the application of this rule in mind, the Court pointed out in the *Young case,* a certiorari proceeding, that "our review of the action of the State Democratic Executive Committee must be confined to the correction of errors of law only, and does not extend to the findings of fact, except when the findings of fact are wholly unsupported by evidence."

There is no contention here about the law. Section 1 of Article 2 of the ·Constitution provides that "All elections by the people shall be by ballot, and elections shall never be held or the ballots counted in secret." And Section 2309 of the Code that "at the close of the election the managers and clerk shall immediately proceed publicly to open the ballot box and count the ballots therein, and continue such count, without adjournment or interruption, until the same is completed, and make such statement of the result thereof, and sign the same as the nature of the election shall require." Also rule 30 of the rules of the Democratic Party, after fixing the time when the polls in primary elections should close, provides that "the managers shall then proceed publicly to count the votes."

It is only necessary, therefore, to inquire whether, as a matter of fact, the ballots cast for magistrate at the Salem precinct were counted, as alleged by the petitioner, in secret. We shall refer to only that part of the evidence—statements and affidavits—pertinent to this charge.

J. M. Asko, deputy sheriff, on the hearing of the contest before the county committee, said that he went to the Salem precinct during the election in question at the request of the sheriff; that he arrived there before the poll was closed and had some trouble in keeping order, as some persons present, among them L. D. Evans, were drinking; that, "when the poll was closed at four o'clock, he closed the door to keep out the drunks"; that "the door was not locked, but latched from the inside with a night latch"; that the managers did not direct him to do this, but he did it to keep order; and

that, while there was no trouble, these "measures were taken as a precaution." He further stated that Evans was the only person who knocked and tried to get into the schoolhouse, and that he refused to let him in because he was drinking, but that he heard "people knocking at the windows trying to get some one's attention." He also said there were six persons in all in the schoolroom where the votes were being counted, and that he and Karl Smith watched the managers as they made the count. C. M. Smith stated that he was at the election in question, "but did not make known to the managers that Ottie W. McKnight had requested him to watch the voting and check the counting of the votes because the doors were closed and locked before any one knew it was going to happen"; that he and many others wanted to see the votes counted but were not permitted to enter the schoolroom; that several knocked at the windows for admission, but were not allowed inside; and that there was no one drunk or any trouble at all, and no confusion that an officer could not handle. An affidavit made by Smith was also submitted, in which he stated, among other things, that the friends of McKnight and watchers for him at the precinct were refused admittance to the building; and that the managers of the election, Karl Smith and Deputy Sheriff Asko, were the only ones who saw the votes counted. The affidavit of Joseph R. Smith was the same as that of C. M. Smith. L. D. Evans stated that he and others were refused admission to the schoolroom where the votes were counted. He also made an affidavit to the same effect.

Counsel for the respondent, B. H. Smith, contend that there was a substantial compliance with the law in the counting of the votes as was done. We are not in accord with this view. On the hearing of the contest, the statements made before the Florence County Committee, and received and acted upon by it as evidence in the matter, along with the several affidavits referred to, clearly disclose that the action of that committee, in holding that the managers

of the primary election at the Salem precinct, on September 22, 1936, publicly counted the votes cast, as required by law and the rules of the party, was without any evidence to support it. Only six persons were on the inside and saw the votes counted. The managers, a deputy sheriff, and one other. The door to the building was closed and securely fastened on the inside, and no other persons, either voters or watchers, were permitted to enter the polling place at the time, although it appears that some sought to do so. By no process of reasoning, however ingenious, can it be said that this was a substantial compliance with the law.

The argument that the closing and latching of the door on the inside was merely "taken as a precaution" is no defense to such action and is without merit. The managers had full charge and control of the election and of the voting precinct and could admit to the polling place police officers to preserve order or to inforce the law. If any person were drunk or disorderly, or sought to interfere with the election or with the managers in the counting of the votes in any way, it was the duty of the deputy sheriff to place such person under arrest, and to call to his assistance all aid necessary to preserve the peace or to enforce the law. The further argument, that the petitioner should not complain for the reason that only one person sought to enter the place, and that his request was refused because he was drinking and disorderly, is also without merit. The law provides, as we have pointed out, that the managers of an election shall publicly count the votes; and persons desiring to see such count are not required to seek or receive permission from any one to do so. The additional contention, that no harm was done the petitioner because the evidence is to the effect that the votes were correctly counted, can have no bearing on the question before us. A claimed correctness of the count, about which the petitioner was unable to offer any proof in the circumstances, cannot be invoked as a defense or justification of the action of the managers of the election

in failing to comply with the plain mandate of the law as to how the votes should be counted.

It is true that irregularities in elections will sometimes creep in; but such a violation of the law, as was committed in the counting of the votes at the Salem precinct, cannot be sanctioned or allowed. If permitted to stand as a precedent, it would undoubtedly open the door to fraud, thus destroying the purpose of elections —the obtaining of a fair and true expression of the popular will. The fact that the primary election at the Salem precinct, about which complaint is here made, was for the nomination of a candidate for magistrate, which merely suggests to the Governor of the State a suitable person to be appointed by him to such office, subject to confirmation by the Senate (*Young v. Sapp, supra*), does not lessen the gravity of the question in the least. The principle involved. applies with equal force to all elections.

The judgment of this Court is that the action of the State Democratic Executive Committee in overruling the appeal of the petitioner and in sustaining the action of the Florence County Executive Committee, be, and the same hereby is, reversed.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.