15471

SALLEY v. SMITH *ET AL.*

(23 S. E. (2d), 6)

*Mr. William M. Smoak,* of Aiken, Counsel of Petitioner,

*Mr. Frampton W. Toole,* of Aiken, Counsel for Respondent A. L. Metz,

November 25, 1942.

MR. ASSOCIATE JUSTICE STUKES delivered the opinion of the Court:

This is a proceeding in certiorari to review the action of the State Democratic Executive Committee whereby it affirmed the action of the Aiken County Committee in declaring A. L. Metz the party nominee for magistrate in District No. 11 of that County. The office is an appointive one under the Constitution, but the practice of designating nominees in party primaries is well known. *Young v. Sapp,* 167 S. C., 364, 166 S. E., 354; *McKnight v. Smith,* 182 S. C., 378, 189 S. E., 361.

On the second day after the first regular primary of 1942, August 27, 1942, the county committee met and tabulated the vote whereby it was determined that of the votes cast in the three participating precincts (voting clubs) Metz received 475, Salley (the present petitioner) 231 and Faulkner 200. And there has been no proper appeal or contest of this

finding of the result of the voting, called "tabulation of the returns" in the applicable law,and rule. Section 2366, Code of 1942; party Rule No. 35.

However, the committee on its own motion ascertained that Metz had not filed after the primary a verified statement of his election expenditures, which is required by the latter portion of Rule 27 of the party and by Section 1417 of the 1942 Code, which stipulate the form of oath which a candidate shall take, including the following: "I further pledge that I will, immediately after the primary election or elections that I am a candidate in, render an itemized statement, under oath, showing all further moneys spent or provided by me in said election." The county committee thereupon declared Salley the nominee, disregarding the candidacy of Metz and the votes cast for him although they constituted a clear majority of all votes cast in that race and there is no other question of the validity of them. Incidentally, there is no allegation or claim of fraud or dishonesty in the election. On the same day, but after the adjournment of the meeting of the committee. Mr. Metz filed with the clerk of Court the required statement of expenditures and there is no attack upon its form or content; it is urged only that it came too late.

Thereafter Metz prepared and filed with the chairman of the county committee his protest of their action in disqualifying him and declaring Salley the nominee. This was done within the two-day period required by Rule 36 of the party but copies were not served upon the other candidates for the office until two days later, the day before a regularly scheduled meeting of the state committee. The Rule provides, after the requirement of the filing of the protest within two days after the action of the county committee, the following: "Copies thereof shall also be served upon opposing candidate or candidates * * *." The corresponding section of the statutory law does not contain the quoted provision. 1942 Code, Section 2366. It only requires the filing of the protest.

The latter in this case was accompanied by an appeal to the state committee and when the latter met on September 1, 1942, all of the candidates concerned appeared, Mr. Salley contenting himself with an appearance only to contest the jurisdiction of the committee upon the ground, in effect, that he had not been served with copies of the contest and appeal within two days after the declaration by the county committee.

After the hearing the State committee took action in the form of a resolution as follows:

"The petition in the matter of A. L. Metz in the Magistrate's race be ordered referred back to the Aiken County Executive Committee with instructions that the County Committee hear and determine the same.

"That it is the sense of the State Committee that failure to file expense accounts after the primary by any definite hour does not disqualify a candidate, and in no case shall a candidate be declared the nominee who has not received a majority of the votes' cast."

Thereafter, on September 10, 1942, the county committee met and rescinded its former action upon the indicated ground that there was no legal requirement of any certain hour of filing of the expense statement referred to, retracted its declaration that Mr. Salley was the nominee, also because he had not received a majority of the votes cast, and then declared Metz the nominee of the party for magistrate in this district. (A majority of the votes is required for nomination. Section 2366, Code of 1942; party Rule 38.)

From the latter action Salley appealed to the State Executive Committee which affirmed the action at the county committee and petitioner procured the writ of certiorari now before this Court. The records of the committees of their respective proceedings have been submitted and the case fully argued by counsel for Messrs. Salley and Metz. The Court also heard Mr. Faulkner who, however, has no

right at stake, as is seen from the foregoing. He ran third according to the tabulation by the county committee and did not formally or properly protest or contest such finding.

Thus two questions arise, First, did the failure of Metz to file his final expense account until after the adjournment of the regular meeting of the county committee on the second day after the primary deprive him of the right to nomination as the recipient of a majority of the votes cast?

Quoted with approval by this Court in the recent case of *Brockman v. Barry,* 195 S. C., 199, 11 S. E. (2d), 137, 138, is the following from the opinion in *Killingsworth v. State Executive Committee,* 125 S. C., 487, 118 S. E., 822: "If these rules and regulations (including statutes of like content—interpolated) are held to be mandatory, and a variation from any one of them fatal to an election, it would be almost impossible to hold a valid election. They must be held to be directory, and in order for a failure to comply with them to be fatal it must be shown that the error was prejudicial or liable to produce prejudice. We have seen that there is nothing in the record to show that the secrecy of the ballot was impaired. There is in this case no question of want of good faith or fraud. The objection is to what, in this case, is a mere technical violation of the law." See to the same effect, *Smoak v. Rhodes et al.,* 200 S. C., 22 S. E. (2d), 685, opinion filed November 5, 1942.

Upon consideration we are constrained to hold that respondent's failure to file his second expense account until two days after the primary was such a technical violation of his pledge as not to vitiate the election. There is no suggestion of prejudice to his opponents by reason of his delay or of any possibility of it producing prejudice. The expense account in question is the second required by the pledge of candidates, the first at the conclusion of the campaign and before the primary and the other, that here in question, to be filed immediately after the primary, covers expense subsequent to that included in

the first, and in this case it was filed within a few days from the required time of filing of the first statement, as to which latter there is no question.

This conclusion is in accord with the holding of the Court in *McLaughlin v. Zeigler,* 87 S. C., 150, 69 S. E., 157, in which the facts in this respect appear to have been identical.

The second question relates to the delay in service upon the other candidates of copies of the protest (and appeal) by Metz of the county committee's first action in declaring Salley the nominee. As stated, Metz complied with the statute by filing his protest (and appeal) with the chairman of the committee within two days after its action but neglected until the second day after the filing to procure service of copies upon his opponents, and this was the eve of the meeting of the State committee.

The record, however, discloses no prejudice on that account to the others, or even possibility of such. They appeared at the meeting of the State committee whose action was to remand the contest to the county committee for hearing. The latter was had on September 10, 1942, ten days after the questioned service, and all parties appeared. Thus the case is very different in this respect from *McLaughlin v. Zeigler, supra,* where no notice of the protest was ever served upon the opposing candidate.

The conclusion cannot be fairly avoided that the requirement of the rule was substantially met and the purpose of the service of copy of the protest fully served. Protestant's opponents thereby actually had notice of the protest and the grounds of it for ten days before the hearing by the county committee. Well worth repeating is the following from the concurring opinion of Justice Woods, in which he was joined by Justice Hydrick, in *State v. State Democratic Executive Committee,* 93 S. C., 321, 76 S. E., 817, 819: "There can be no doubt that by the statute enacted on the subject the General Assembly intended to give primary elections a legal status, and it follows that the per-

sons interested therein have a right to the writ of certiorari when the tribunals designated by the party law for the decision of controversies have not proceeded according to the statute law of the rules and constitution of the party which have been given by the statute the force of law. But it ought to be a clear case of infringement of the party rules to warrant the court in interfering, especially when the ground of complaint relates to party procedure rather than the substance of the matter."

No error is found in the action of the State committee, hence it is affirmed and the writ quashed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE, and CIRCUIT JUDGE LIDE, ACTING ASSOCIATE JUSTICE, concur.