17488

Jack C. LOVELLE, Petitioner, v. O. Frank THORNTON *et al.*, Respondents

(106 S. E. (2d) 531)

*Messrs. Smith & Smith,* of Florence, *for Petitioner. Messrs. T. C. Callison, Attorney General* and *James S. Verner, Assistant Attorney General,* of Columbia, *for Respondent, Board of State Canvassers,* and *McEachin, Towsend & Zeigler,* of Florence, *for Respondent, J. A. Elvington.*

January 13, 1959.

LEGGE, Justice.

Petitioner, a "write-in" candidate in the general election of November 4, 1958, for the office of County Commissioner in Dillon County, seeks certiorari to review the action of the Board of State Canvassers overruling his protest of the election of his opponent, J. A. Elvington. The facts before us, as shown in the petition and the returns to the order to show cause issued thereon, are not in dispute.

There were two Democratic primaries,—the first on June 10, the second on June 24. The latter resulted in Elvington's nomination as the candidate of the Democratic party. In the general election Elvington received 356 votes, the petitioner 187.

The protest was based upon alleged failure of Elvington to comply with the requirements of Section 23-265 of the 1952 Code. That section provides that "every candidate in an election, general, special or primary," shall make and file with the clerk of the court of common pleas of the county in which he is a candidate, the following pledge:

"I, the undersigned ————————————, of the county of ————————————, and State of South Carolina, candidate for the office of ————————, hereby pledge that I will not give money or use intoxicating liquors for the purpose of obtaining or influencing votes and that I shall, at the conclusion of the campaign and before the election, render to the clerk of court, * * * under oath, an itemized statement of all moneys spent or provided by me during the campaign for campaign purposes up to that time; and I further pledge that I will immediately after the election render an itemized statement, under oath, showing all further moneys spent or provided by me in said election."

It further provides that "a failure to comply with this provision shall render such election null and void, insofar as concerns the candidate who fails to file the statement herein required, but shall not affect the validity of the election of any candidate complying with this section", and that "any violation of the provisions of the pledge required in this section shall be a misdemeanor."

On June 9, 1958, Elvington filed with the clerk of court a single sheet of paper. At the top of it was "Candidate's Pledge", in the words of the statute, dated June 9, 1958, and signed by Elvington. Below this "Candidate's Pledge" was an "Expense Account—Primary", signed by Elvington and sworn to before the clerk of court on June 9, 1958, showing expenditures aggregating $60.00.

On June 11, 1958, Elvington filed with the clerk of court another one-page document, in form identical with that before mentioned, containing the "Candidate's Pledge", unsigned, and an "Expense Account—Primary", signed by him and sworn to before the clerk of court on June 11, 1958, showing expenditures aggregating $200.00.

On June 23, 1958, he filed with the clerk of court another, containing, in form identical with those before mentioned, the "Candidate's Pledge", dated June 23, 1958, signed by him, and an "Expense Account— Primary", signed by him

and sworn to before the clerk of court on June 23, 1958, showing expenditures aggregating $55.00.

On June 25, 1958, he filed with the clerk of court another, containing, in form identical with those before mentioned, the "Candidate's Pledge", dated June 25, 1958, signed by him, and an "Expense Account—Primary", signed by him and sworn to before the clerk of court on June 25, 1958, showing expenditures aggregating $57.50.

On November 4, 1958, the day of the general election, about noon, he filed with the clerk of court another, containing, in form identical with those before mentioned except for the caption of the expense account, the "Candidate's Pledge", dated November 4, 1958, signed by him, and an "Expense Account—General", signed by him and sworn to before the clerk of court on November 4, 1958, showing no expenditures.

On November 8, 1958, he filed with the clerk of court another, containing, in form identical with that last mentioned, the "Candidate's Pledge", dated November 8, 1958, signed by him, and an "Expense Account—General", signed by him and sworn to before the clerk of court on November 8, 1958, showing no expenditures.

The petition here does not charge non-compliance with the statute with respect to the two primary elections. And it clearly appears from the facts before recited that as to the primaries Elvington did comply with the statutory requirements as to both pledge and statements of expenditures, by: (a) filing the pledge on June 9 (the day before the first primary) and again on June 23 (the day before the second primary); and (b) filing an "Expense Account—Primary" on June 9, another on June 11, another on June 23, and another on June 25. So far as concerns these statements of expenditures, the filing of the one on June 9 and the one on June 25 would have been sufficient compliance with the statute. *Breeden v. S. C. Democratic Executive Committee,* 226 S. C. 204, 84 S. E. (2d) 723.

Did Elvington sufficiently comply with the statutory requirement of pledge, pre-election statement of expenditures, and post-election statement of expenditures, in relation to the general election? Assuming, as petitioner argues, that his pledge filed before each primary as "candidate for the office of County Commissioner, Hillsboro Township" was ineffectual as a pledge after his nomination, no such impotency can fairly be ascribed to the pledge that he filed on June 25, the day after the second primary. For the pledge is essentially prospective, and the only election then in prospect was the general election that was to be held the following November. We need not, therefore, decide whether the filing of his pledge on the morning of the general election constituted, in itself, substantial compliance with the statutory requirement as to time of filing. Its filing on June 25 complied with the statute.

As to the statements of expenditures required to be filed before and after the general election, the first was filed, as we have stated, on the morning of the election, after the polls had opened; the second, on November 8, four days after the election. Each showed that no expenditure had been made for campaign purposes. The latter statement substantially complied, as to time of filing, with the requirement of the statute. *Breedin v. S. C. Democratic Executive Committee, supra.* Since the former showed that no expenditure had been made, its filing on the day of the election, after the opening of the polls, was not, in our opinion, fatal to Elvington's election. The provisions of the statute with reference to the time of filing are directory rather than mandatory. To justify overthrow of an election, failure to comply with them must appear to have been prejudicial or likely to result in prejudice. Cf. *Salley v. Smith,* 201 S. C. 338, 23 S. E. (2d) 6. No such showing is made here, nor is there any suggestion of fraud or corruption. We should not, because of a merely technical failure to comply with a directory provision of the statute, deny to the successful candidate the fruits of his victory, or to the voters the officer of their

choice. Cf. *Sparkman v. Saylor,* 1918, 180 Ky. 263, 202 S. W. 649; *State ex rel. Williams v. Jones,* 1942, 179 Tenn. 206, 164 S. W. (2d) 823; *Brewer v. DeMaioribus,* 1956, 102 Ohio App. 566, 136 N. E. (2d) 772.

We think that in the circumstances of this case the filing of the pre-election statement on the morning of the election constituted substantial, and therefore sufficient, compliance with the requirement of the statute.

Petition dismissed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.