19435

Howard A. SMITH, Respondent, v. S. J. PRATT, et al., Appellants

(189 S. E. (2d) 801)

Messrs. *Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr.,* and *Timothy G. Quinn, Asst. Attys. Gen.,* of Columbia, *for Appellants,*

*T. Eston Marchant, Esq.,* of *Marchant, Bristow & Bates,* Columbia, *for Respondent,*

*Francis P. Mood, Esq.,* of *Boyd, Bruton, Knowlton, Tate & Finlay, Columbia, Amicus Curiae,*

June 1, 1972.

BUSSEY, Justice.

The respondent Howard A. Smith, as Columbia District Manager of Minit Saver Food Stores of South Carolina,

Inc., filed an application on June 1, 1971, with the South Carolina Alcoholic Beverage Control Commission for the renewal of a beer and wine permit issued to him for the benefit of Minit Saver Store No. 34007, located at 3103 Millwood Avenue, Columbia. The issuance of such permit having been protested by Epworth Children's Home located nearby, the Commission held a hearing and thereafter declined to issue a renewal permit, the Commission concluding that the location was "unsuitable for the sale of beer and wine."

Respondent Smith then petitioned the Richland County Court for a writ of *certiorari,* which was issued, and after a hearing that court entered an order holding *inter alia,* that there was no competent evidence to support the finding of the Commission that the location of the establishment was unsuitable for a permit. The court accordingly ordered the issuance of the permit and the Commission appeals.

The parties have stated and argued several questions and we have also been afforded the benefit of an *amicus curiae* brief. The cardinal question, however, and the only one necessary to decide is whether the Commission's determination of unsuitability of the location was wholly unsupported by the evidence. *Feldman v. S. C. Tax Commission,* 203 S. C. 49, 26 S. E. (2d) 22. Code Section 4-212 provides in part:

"Qualifications for permit.—No permit authorizing the sale of beer or wine shall be issued unless: * * * 6. The location of the proposed place of business of applicant shall in the opinion of the * * * Commission be a proper one."

The language of the statute indicates legislative intention to vest in the Commission a rather broad discretion in determining the fitness or suitability of a particular location, but this discretion is not an unlimited one and does not authorize a determination of unsuitability which is wholly unsupported by any competent evidence.

Competent evidence discloses the following facts. Millwood Avenue is a main thoroughfare in the City of Co-

lumbia. The particular Minit Saver Store is diagonally across the street from Epworth Children's Home and by route of ordinary pedestrian or vehicular travel is more than one thousand feet from the entrance to Epworth. It is some four hundred fifty to four hundred sixty feet distant from the nearest corner of Epworth grounds, which are surrounded by a brick wall the height of which does not appear in the record. The particular place of business had been continuously issued a beer and wine permit since 1966, and is open from 7 A. M. to 11 P. M. The next nearest location to Epworth, which is open at night, having a beer and wine permit is approximately three blocks from Epworth entrance, but inferentially not nearly that far from Epworth property.

The Director, business manager and a housemother of Epworth appeared in opposition at the hearing before the Commission. The gist of their testimony is to the effect that from time to time Epworth has had some problems with teen-agers, resident at Epworth, obtaining and consuming beer and wine. Based altogether on hearsay and reports, they had concluded that beer and wine had from time to time been acquired by such teen-agers from the particular Minit Saver Store. They pointed to the proximity of the particular location, that it was open until 11 o'clock in the evening, and that teen-agers could slip out to the patricular store and be back in a very few minutes. Except from hearsay evidence, there is no evidence that any teen-ager from Epworth Orphanage ever did so. For the most part the testimony of these witnesses consisted only of generalities, opinions, conclusions and hearsay reports. But for the fact that it has a beer and wine permit, these witnesses conceded that the particular establishment is well run, clean, orderly and an asset to the community.

There is only one alleged incident involving an Epworth teen-ager and the particular store, as to which there is any direct evidence whatever, and, as far as the record goes, this particular instance is the nearest in point of time to the

hearing of any of the alleged or reported incidents mentioned in the testimony. About six months prior to the hearing a teen-aged resident of Epworth, with permission, was riding around Columbia in an automobile with a teen-ager not a resident of Epworth. The Epworth teen-ager testified at the hearing that he and his host stopped at the particular store in the course of the automobile journey and bought one can of beer. It is inferential from his testimony and other evidence in the record that the purchase was made from a substitute employee of the store, rather than regular personnel. In any event, it is obvious, we think, that the proximity of the particular store to Epworth was of no consequence since the two teen-agers could have gone almost anywhere in Columbia they desired. While there is evidence, mostly hearsay, as to alleged sales of beer to Epworth residents under the age of 18, we find no competent evidence whatever in the record supporting a factual finding that the particular location is an unsuitable one.

The legislature has apparently not so far seen fit to lay down any guidelines or standards with respect to the proximity of the holder of a beer and wine license to churches, schools, playgrounds, etc., and prior to 1960 no proximity guidelines had been established for the guidance of the Commission in granting retail liquor licenses. With respect, however, to liquor licenses, the legislature in 1960 did enact what is now Code Sec. 4-33.1. By reference thereto it will be seen that a liquor license may not be granted for a location in a municipality within three hundred feet of a church, school, or playground, the distance to be computed by the shortest route of ordinary travel along the public thoroughfare. Epworth is neither a church, school, nor a playground but partakes somewhat of the nature of all three. While the foregoing statute is not at all controlling, it is persuasive that a finding of unsuitability of location in this case may not be predicated solely upon the fact that the location is slightly more than one thousand feet from an institution such as Epworth.

Since the beer and wine here involved have been expressly declared to be nonalcoholic and nonintoxicating beverages, Code Sec. 4-201, it is entirely illogical, we think, to conclude that a location is unsuitable for a license, solely on the basis of proximity, when the distance involved is more than three times as much as the minimum distance determined by the legislature with respect to an alcoholic liquor license. In a metropolis such as Columbia, few, if any, beer and wine permits would be issued if all locations were required to be substantially more than one thousand feet away from any church, school, playground or institution such as Epworth.

As we view the evidence, the real ground of protesters' objection here is not unsuitability of the location, but rather charges of unlawful sales of beer and wine to minors, which, with the one exception, remain unproved by any competent evidence. While this is a renewal application and not a revocation proceeding, it is not amiss to point out that proof of an illegal sale is ground for revocation but respondent's license could not be revoked without his being alternatively given an option of paying a fine. Code Sec. 4-27.7 (Act No. 28 of the Acts of 1968) provides that:

"* * * the Alcoholic Beverage Control Commission shall impose a monetary penalty as an alternate to revocation or suspension * * *."

A refusal to renew a license on a finding of unsuitability of location, which is predicated in reality upon alleged illegal sales, as opposed to any adverse circumstance of location, is tantamount to a revocation of a license without giving the licensee the alternative of paying a fine.

From the foregoing facts and for the reasons hereinabove set forth, we conclude that the lower court correctly determined that the Commission's finding of unsuitability of location was without the support of any competent evidence whatever. The judgment of the lower court is

Affirmed.

Lewis and Brailsford, JJ., concur.

Moss, C. J., and Littlejohn, J., dissent.

Littlejohn, Justice (dissenting):

I respectfully dissent and would reverse the order of the lower court, thereby reinstating the ruling of the South Carolina Alcoholic Beverage Control Commission which refused to issue the renewal license for sale of beer and wine.

The rule is well established in this state that courts will not disturb the ruling of an administrative board on a *certiorari* hearing unless such findings are entirely without support in the evidence. *McKnight v. Smith*, 182 S. C. 378, 189 S. E. 361 (1937). The disagreement in this case arises, not as to the rule, but in its application to the facts. It is well established that in hearings before administrative boards, hearsay evidence, especially if not objected to, may be considered and given such probative value as the board thinks appropriate.

"Nevertheless, hearsay evidence is generally held admissible in proceedings before administrative agencies, at last for limited purposes, especially when not objected to." 2 Am. Jur. (2d) Administrative Law § 382 (1962).

It is inescapable that the lower court and Mr. Justice Bussey elected to totally ignore evidence which the Commission was entitled to, and did consider. In effect, both the lower court and Mr. Justice Bussey tried the case all over again. The testimony of the director, the business manager and the housemother should not be ignored. Certainly it should not be discredited by denominating it incompetent. It is not the province of the court to try the issues. It cannot be said that the findings and conclusions of the Commission were wholly without evidentiary support.

Chairman Pratt of the Commission stated at the commencement of the hearing, "This is an administrative hearing, not a court of law . . . therefore, the strict rule of evidence does not apply . . . if, however, you decide you wish

to object to any evidence, please state your objection and the Commission will rule whether or not to reject or accept the evidence or information." Considerable testimony based on investigations made by officials of the Epworth Children's Home was presented to the Commission without objection.

Protest before the Commission was made by the Children's Home, which presented four witnesses. Mrs. Ruby Weeks Browning testified that she was a housemother in charge of thirteen boys. She testified that there had been a history of boys under her charge buying beer at this location and creating disturbances at the orphanage. She said that the close proximity of the store contributed to their problem because it was the only place they could go to buy beer and get back without being caught.

Mr. James William Patrick, business manager, testified that boys had told him that they had purchased beer at the Minit Saver. He said that there were 150 students on the campus, and that there was not an establishment that sold beer within the area closer than three or four blocks. He said he had made an investigation of the problem and his investigation revealed that the Minit Saver sold beer to male students under 18 years of age. His investigation involved talking with fifteen students.

Dr. Allan Broome testified that the school had repeated trouble and difficulties with the Minit Saver, and that he had talked with children who had purchased beer at the store. He testified:

"Q. And Dr. Broome . . . why have you opposed on behalf of your organization, renewal of the Minit Store Application?

"A. Because this is the location . . . where we have had repeated difficulties and trouble . . . and therefore . . . we feel that the location is not proper for this reason.

"Q. To what extent has the Minit Store . . . in question . . . been involved in the alleged disruption of the programs as compared to other stores in the area?

"A. The difficulty here has been that . . . from the reports which I have coming to me, are that . . . this is the location and I have not had reports from other locations . . . wherever they be located.

* * *

"Q. Dr. Broome . . . how long have you been aware of the problem existing with reference to this store?

"A. With this store? . . . I cannot give you an exact answer, because its been going for several years . . . two or three years . . . and it has been constantly coming up . . . in the process of the operation of the Home, because I don't date it back to a particular point, but it has been going for a considerable length of time."

David Rose, a 14-year-old boy from the orphanage, testified that he had purchased beer at the Minit Saver and that other boys and girls under the age of 18 also bought beer there, and that he picked this store because it was the closest.

No one employed at the store testified for the applicant. Howard A. Smith, district manager, testified to the effect that it was against the policy of the store to violate the law and to sell beer to minors. He was not aware of any such sale taking place.

There can be no doubt but that the evidence which the Commission was entitled to consider warranted the conclusion that the close proximity of beer sales at this store creates difficult disciplinary problems for the Epworth Children's Home. Under Code Section 4-212 the Commission is given a broad discretion in the granting or refusing of applications and renewals. The difficulties had heretofore been reported to the law enforcement agencies by the Epworth authorities. They declined to do anything in the absence of direct proof of a violation of the law.

I do not think it can be said that the ruling of the Commission was wholly without evidentiary support. The problem is one which should be determined by the Commission

under the evidence and I cannot say that the Commission erred as a matter of law.

The Commission obviously concluded that the Children's Home has disciplinary problems growing out of the close proximity of the licensee's beer sales. Its action in refusing to renew the license need not rest on strict proof that sales were made unlawfully to the children. A beer license is not a matter of right; it is not a property right; it is a privilege which the State grants or refuses to grant under the police power. The renewal of the license solves Smith's problem; it perpetuates the problem of the Home.

I would reverse the order of the Richland County Court. Moss, C. J., concurs.