19552

James H. FOWLER, Sr., Respondent, v. W. W. LEWIS et al., Appellants

(194 S. E. (2d) 191)

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Alexander S. Macaulay, Asst. Atty. Gen.,* of Columbia, *for Appellants,*

*David N. Wilburn, Jr., Esq.,* of Union, *for Respondent,*

January 18, 1973.

BRAILSFORD, Justice.

James H. Fowler, the respondent, operates the Dixie Curb Market, a large grocery store, and, under the same roof, a launderette, at a five-corner intersection in the City of Union. His application for a retail beer and wine permit was denied by the South Carolina Alcoholic Beverage Control Commission on the ground that the location is unsuitable. Upon *certiorari* review by the circuit court, the determination by the Commission was reversed for lack of evidentiary support, and the Commission has appealed.

By Section 4-212, Code of 1962, the legislature has vested in the Commission a "broad discretion in determining the fitness or suitability of a particular location . . . ." *Smith v. Pratt,* 258 S. C. 504, 189 S. E. (2d) 301, 302 (1972). The Commission's exercise of its discretion in this respect may not be interfered with on *certiorari* unless its determination is wholly without evidence to support it. *Feldman v. South Carolina Tax Commission,* 203 S. C. 49, 26 S. E. (2d) 22 (1943). Neither this Court nor the circuit court has the authority to weigh the evidence and substitute its judgment for that of the Commission. The sole issue on this appeal is whether the court erred in concluding that the Commission's determination of unsuitability was without evidentiary support.

The location is in a predominantly residential area, but businesses are located at all corners of the intersection. Several low-cost housing projects are nearby. Respondent's building is on a large parking lot which is bounded on the rear by an unused school plant, including several buildings and a playground.

Respondent's businesses remain open until 11:00 P. M., and people from the area tend to congregate there, particularly in the launderette and parking lot. The Chief of Police of Union, his assistant and another policeman testified in opposition to granting the license. The Chief testified:

"(W)e, as the department, feel that it's going to be detrimental in more ways than one. It's going to be an additional burden to us as far as policing is concerned. . . . (W)e've had numerous calls down there. We've had numerous arrests there. I'm not saying that all this is inside the building. He has quite a parking area in front. . . . To our way of thinking if this license is issued, there's nothing to keep those people from gathering on his lot in cars, because there is quite a bit of traffic out there. Going behind the building is just too—too accessible for consumption of beer without his knowledge and we feel like it's just going to be detrimental. I'd say, to the community as well as to the department having this additional burden. We're not a big department, we just don't have facilities that we'd like to have to police (inaudible)."

The Assistant Chief testified: "As to the arrests, now I couldn't tell you the name. Of course, we have a good many arrests in the washerette and outside." He also stated that he had answered wreck calls to the property.

The third witness from the department had been a patrolman for some two and one-half years. He testified: "In that amount of time, I have had frequent calls to Dixie Curb Market area. . . . I've had numerous drunks picked up there at the washerette and I could state the names of a few. . . . We've had wreck calls there. We've had calls there after the Dixie Curb Market was closed. About the congregation of people there and they'd be a call that there was a fight on the lot. . . . Q. But you will state that you've had numerous disturbance calls on this lot? A. Yes."

We think it inferable from this evidence that under present conditions, with no cold beer available in the area,

58

congregations of people on respondent's property are not infrequently attended by some consumption of alcohol and disorder. Since the Commission could reasonably have concluded that the situation would be worsened by making cold beer immediately available, the evidence bore on the suitability of the location and lent support to the Commission's determination.

Reversed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.