## 21056

STATE of South Carolina ex rel. Richard W. RILEY, Governor of the State of South Carolina, and Daniel R. McLeod, Attorney General of the State of South Carolina, Plaintiffs, v. Nick Peters PECHILIS, John B. Halloran, Jr., Richard A. Patterson, individually and as representatives of all other candidates for nomination by advisory election to the office of magistrate, the Democratic Party of South Carolina and the Republican Party of South Carolina, individually and as representatives of all other certified political parties in South Carolina, Defendants.

STATE of South Carolina, ex rel. Richard W. RILEY, Governor of the State of South Carolina, and Daniel R. McLeod, Attorney General of the State of South Carolina, Plaintiffs, v. Joseph E. HINES, Jr., L. Paul Barnes, C. Tyrone Gilmore, as Commissioners of Election for Spartanburg County, South Carolina, and their successors in office, Defendants.

(258 S. E. (2d) 433)

*Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. C. Tol-
bert Goolsby, Jr.,* and *Senior Asst. Atty. Gen. Karen Le-
Craft Henderson,* Columbia, *for plaintiffs.*

*Robert C. Elliott, Bernard Manning, Clinch Heyward
Belser* and *Clinch H. Belser, Jr.,* of *Belser, Baker, Barwick
& Toal, Ronald C. Dodson,* of *Kirkland, Aaron & Alley,
Asst. Attys. Gen. Sally G. Young* and *Charles H. Richard-
son* and *Everett N. Brandon* and *Joseph C. Coleman,* Co-
lumbia, *for defendants.*

*James P. Fields, Jr., M. Elizabeth Crum* and *Thomas
Linton,* Columbia, *on behalf of the General Assembly, ami-
cus curiae.*

September 11, 1979.

*Per Curiam:*

The issues to be decided in this case arise out of two ac-
tions brought, by permission, in the original jurisdiction of
this Court by the State on the relation of Governor Richard
W. Riley and Attorney General Daniel R. McLeod to de-
termine the constitutionality of requirements that those seek-
ing the nomination for the office of magistrate participate
in advisory elections. The complaints have been treated as
one action for the purpose of presentation and disposition of
the issues.

While the State challenges on several grounds the use of
advisory elections to determine nominees for the office of
magistrate, we need only consider the contention that elec-
tions impermissibly chill the constitutional process which
prescribes the manner in which magistrates are to be selected.

The office of magistrate in this State is made an appoint-
ive judicial office by the terms of Article 5, Section 23, of
the State Constitution, which directs:

The Governor, by and with the advice and consent of the Senate, shall appoint a number of magistrates for each county as provided by law.

Since the Constitution clearly and plainly states that magistrates *shall* be appointed, we must assume that every other method of selection was excluded, including election by popular vote. It is significant, we think, that in every instance, in specifying the manner of selection of members of the judiciary, the Constitution provides for some method other than a popular election. (See Article 5, Sections 3 and 9, specifying manner of selection of Circuit Court judges and Supreme Court justices). In fact, the Constitution of 1868 provided in Article IV, Section 21, for the popular election of the "trial justices". The 1895 revisions to the Constitution changed the name of the "trial justices" to "magistrates" and provided for their appointment by the Governor by and with the advice and consent of the Senate. This is a plainly manifested intent of the people of this State to avoid the popular election of members of the judiciary.

Any statute or requirement which, directly, or by necessary implication, operates so as to defeat the purpose and intent of the foregoing constitutional provision is unconstitutional.

This constitutional provision therefore sets forth the exclusive method for selection of magistrates, and compliance with its terms is mandatory.

In the light of these principles, we examine the issue to be decided.

It is well to keep in mind that we are not here dealing with a situation involving the infringement upon the right of the people to vote upon a candidate for office, but rather with a situation where there is a clear, plain, and unambiguous constitutional disavowal by the people of any right to directly vote for a candidate.

In spite of the constitutional mandate whereby the office of magistrate is expressly made an appointive office, political parties have for many years used preferential primary elections in some counties as a method to select nominees for the office of magistrate to be submitted to the Governor for appointment. There can now be no doubt that party primary elections are a part of the election machinery of the State. *Rice v. Elmore,* 4th Cir., 165 F. (2d) 387. Wherever preferential primaries have been used to determine nominees of the political parties for magistrate, only the winner of such party election is recommended by the party to the Governor for appointment, so that any person who fails to enter such election cannot obtain party endorsement.

In addition to the foregoing action by political parties, statutes have been enacted in several instances providing for magisterial nominating elections, one of which (57 Stat. 3044), enacted in 1972 and specifically challenged in this action, authorizes the Commissioners of Election of Spartanburg County, South Carolina, to conduct elections in the county in order to allow voters to determine the nominees for appointment to each office of magistrate in that county. This statute provides in pertinent part as follows:

Effective in 1976 the magistrates in Spartanburg County shall be nominated for appointment at the general election by the voters residing in their respective districts. Candidates for magistrates shall not be nominated in party primaries or conventions but by petitions signed by one hundred or more qualified electors residing in the magisterial district. Upon petition being filed with the Spartanburg County Election Commission not later than sixty days prior to the date of the holding of the general election and the payment to the county treasurer of a one hundred dollar filing fee, the names of the nominees shall be placed upon the ballot.

With extremely rare exception, nominees named in the election, provided for magistrates have received the nomination by the Governor and approval by the Senate.

The undeniable purpose of the elections held pursuant to statute and by the political parties is to use the election machinery to coerce the Governor into appointing and the Senate into confirming the nominee of the election, regardless of his or her qualifications for office, thereby chilling the constitutionally granted discretionary power of the Governor to appoint magistrates.

With the overwhelming acceptance through the years by the Governor and the Senate of the nominees of the magisterial elections, candidates are, for all practical purposes, forced to enter the popular election process to become magistrate.

The fact that the Governor is not bound to accept the individual named in such election is not decisive of the present issue. The decisive fact is the effect of such election upon the exercise of the power of appointment.

*State v. Green*, 220 S. C. 315, 67 S. E. (2d) 509 (1951), though factually dissimilar, provides a principle pertinent to this case. In *Green*, the trial court, after a guilty verdict was rendered, requested the jury to return to the jury room and make a recommendation as to the sentence to be imposed on the defendant. Although the court admonished the jury that its recommendation would be purely advisory and the ultimate sentencing decision remained solely within the province of the trial judge, this Court concluded the procedure was erroneous because it invaded the singular power of the court to fix punishment. This Court stated:

While we have no doubt that the course pursued by the trial judge was prompted by the best motives, and was designed for the purpose of aiding him in determining the punishment to be imposed, yet we feel bound to regard it as a highly irregular if not a dangerous innovation upon well settled legal principles, 220 S. C. at 320, 67 S. E. (2d) at 511.

Similarly here, while we have no doubt that the holding of advisory elections to "nominate" magistrates is a well

intentioned method of disclosing the choice of the people, there is simply no authority for this infringement upon the governor's discretion to appoint magistrates. The defendants assert that, since their primaries are advisory only and not binding upon the Governor, they do not contravene the constitutional method whereby magistrates are appointed. We disagree. The clear effect of such primaries is to chill the constitutional selection process and abridge the discretionary power of the Governor to appoint magistrates.

The decisions in *Young v. Sapp,* 167 S. C. 364, 166 S. E. 354, and those which followed it, such as *McKnight v. Smith,* 182 S. C. 378, 189 S. E. 361; *Weston v. Williams,* 190 S. C. 112, 2 S. E. (2d) 381; *Salley v. Smith,* 201 S. C. 338, 23 S. E. (2d) 6; *Glasscock v. Bradford,* 218 S. C. 458, 63 S. E. (2d) 166; and *Breeden v. South Carolina Democratic Executive Commission,* 226 S. C. 204, 84 S. E. (2d) 723, are not controlling in this case. The constitutionality of advisory elections to determine a nominee for magistrate was not at issue in those cases. The Court was careful to point out in *Young* that "the constitutionality of [*the statute providing for an advisory election*] has been in no way attacked."

We therefore conclude that the establishment of the election procedure to select a nominee for magistrate, either by party primary or statute, and the rseulting almost universally coerced acceptance by the Governor and the Senate of the nominee of the election has, in fact, so chilled the discretionary power of the Governor and Senate to appoint magistrates in this State as to amount to the circumvention of the constitutionally mandated method for the appointment of magistrates.

The party primaries and the Statute under attack clearly violate Article V, Section 23, of the Constitution and further attempts to hold advisory elections for magistrates thereunder are hereby permanently restrained and enjoined.