670 S.E.2d 674

The **ORIGINAL BLUE RIBBON TAXI
CORPORATION, Respondent,**

v.

**SOUTH CAROLINA DEPARTMENT OF
MOTOR VEHICLES, Appellant.**

**No. 4461.**

Court of Appeals of South Carolina.

Heard Nov. 19, 2008.
Decided Nov. 25, 2008.

Frank L. Valenta, Jr., Phillip S. Porter, and Linda Grice, all of Blythewood, for Appellant.

Gerald M. Finkel and Robert B. Phillips, of Columbia, for Respondent.

ANDERSON, J.:

The South Carolina Department of Motor Vehicles ("DMV") appeals the order of the Administrative Law Court ("ALC") reversing the DMV's denial of an application for a Self–Insurance Certificate. The DMV contends the applicant did not satisfy the requirements established in S.C.Code Ann. § 56–9–60. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

The Original Blue Ribbon Taxi Cab Corporation ("Blue Ribbon") operates a fleet of taxi cabs in South Carolina and has been in operation for over seventy years. Blue Ribbon originally insured its vehicles with policies from various insurance carriers. However, due to soaring policy rates, Blue Ribbon sought and obtained a Self–Insurance Certificate from the DMV. In order to meet the requirements of a self-insurer, Blue Ribbon maintained a segregated claims account to pay judgments entered against it, relying on a letter of credit from the Sumter National Bank ("Bank"). The DMV accepted the letter of credit as complying with the statutory prerequisites.

On November 14, 2005, Blue Ribbon and the Bank renewed and amended the irrevocable letter of credit to limit claims to

the minimum automobile insurance policy limits enacted by the General Assembly. In February 2006, the DMV denied Blue Ribbon's renewal application for the Self–Insurance Certificate in response to the new limitations provided for in the letter of credit. Blue Ribbon contested the decision before a DMV Senior Hearing Officer. In his order affirming the denial, the Senior Hearing Officer expounded:

> I conclude that the DMV was not satisfied that the Letter of Credit submitted by the Petitioner showed ability to satisfy any judgment against it. I conclude that this decision was in the discretion of DMV as afforded by Section 56–9–60, that the decision was not unreasonable and that it did not contradict state law.

Blue Ribbon further appealed to the Administrative Law Court. The ALC judge issued an order enunciating:

> I conclude that the Department's decision to deny Blue Ribbon's application warrants reversal. The Department's decision is premised on the assumption that the legislature intended for self-insurers to provide *greater* protection to the public than statutory liability policies provide. However, the Department's assumption is at odds with the way in which our Supreme Court has interpreted legislative intent with respect to the self-insurer statute.
>
> . . .
>
> Furthermore, if the Department were able to deny self-insurer status in any case where it was dissatisfied that the applicant was able to pay *any* judgment that might be entered against it, then the Department could deny virtually all applications for self-insurer certification. Few, if any, South Carolina companies seeking self-insurer certification can show that they are able to satisfy *any* potential adverse judgment, no matter how large.

(emphasis in original). The ALC judge concluded Blue Ribbon had complied with the statutory requirements for self-insurer status and reversed the decision of the DMV.

## ISSUE

Did the Administrative Law Court err in reversing the South Carolina Department of Motor Vehicles' denial of Blue

Ribbon's application for a Self–Insurance Certificate under S.C.Code Ann. § 56–9–60?

## STANDARD OF REVIEW

■ In an appeal from the decision of an administrative agency, the Administrative Procedures Act provides the appropriate standard of review. *Olson v. S.C. Dep't of Health & Envtl. Control,* 379 S.C. 57, 63, 663 S.E.2d 497, 500–501 (Ct.App.2008); *Turner v. S.C. Dep't of Health & Envtl. Control,* 377 S.C. 540, 544, 661 S.E.2d 118, 120 (Ct.App.2008); *Clark v. Aiken County Gov't,* 366 S.C. 102, 107, 620 S.E.2d 99, 101 (Ct.App.2005). Section 1–23–610(C) of the South Carolina Code is applicable and efficacious in articulating the standard:

> The review of the administrative law judge's order must be confined to the record. The reviewing tribunal may affirm the decision or remand the case for further proceedings; or it may reverse or modify the decision if the substantive rights of the petitioner has been prejudiced because of the finding, conclusion, or decision is:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) affected by other error of law;
>
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C.Code Ann. § 1–23–610(C) (Supp.2007).

■ The decision of the Administrative Law Court should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law. *Olson,* 379 S.C. at 63, 663 S.E.2d at 501 ("[T]his court can reverse the ALC if the findings are affected by error of law, are not supported by substantial evidence, or are characterized by abuse of discretion or clearly unwarranted exercise of discretion."); *see* S.C.Code Ann. § 1–23–610(C). The ALC judge's order should be affirmed if supported by substantial evidence in the record. *See Whitworth v. Window World, Inc.,* 377 S.C. 637, 640, 661 S.E.2d 333, 335 (2008); *Houston v. Deloach & Deloach,* 378

S.C. 543, 550, 663 S.E.2d 85, 88 (Ct.App.2008); *McGriff v. Worsley Cos., Inc.,* 376 S.C. 103, 109, 654 S.E.2d 856, 859 (Ct.App.2007). "However, the reviewing court may reverse or modify the decision of the ALC judge if the finding, conclusion, or decision reached is 'clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record' or is affected by an error of law." *S.C. Coastal Conservation League v. S.C. Dep't of Health & Envtl. Control,* 669 S.E.2d 899, 2008 WL 4693075 (S.C.App.2008) (citing *Olson,* 379 S.C. at 63, 663 S.E.2d at 501; S.C.Code Ann. § 1–23–610(C)(d)–(e)); *see also SGM–Moonglo, Inc. v. S.C. Dep't of Revenue,* 378 S.C. 293, 295, 662 S.E.2d 487, 488 (Ct.App.2008) ("The court of appeals may reverse or modify the decision only if the appellant's substantive rights have been prejudiced because the decision is clearly erroneous in light of the reliable and substantial evidence on the whole record, arbitrary or otherwise characterized by an abuse of discretion, or affected by other error of law.").

Substantial evidence, when considering the record as a whole, would allow reasonable minds to reach the same conclusion as the Administrative Law Court and is more than a mere scintilla of evidence. *S.C. Coastal,* 669 S.E.2d 899, 2008 WL 4693075 at *4 (citing *Olson,* 379 S.C. at 63, 663 S.E.2d at 501); *see Whitworth,* 377 S.C. at 640, 661 S.E.2d at 335; *Sea Pines Ass'n for Prot. of Wildlife, Inc. v. S.C. Dep't of Natural Res.,* 345 S.C. 594, 605, 550 S.E.2d 287, 294 (2001); *Jones v. Harold Arnold's Sentry Buick, Pontiac,* 376 S.C. 375, 378, 656 S.E.2d 772, 774 (Ct.App.2008); *McGriff,* 376 S.C. at 109, 654 S.E.2d at 859; *Liberty Mut. Ins. Co. v. S.C. Second Injury Fund,* 363 S.C. 612, 619, 611 S.E.2d 297, 300 (Ct.App. 2005); *Tennis v. S.C. Dep't of Soc. Servs.,* 355 S.C. 551, 558, 585 S.E.2d 312, 316 (Ct.App.2003); *Gattis v. Murrells Inlet VFW No. 10420,* 353 S.C. 100, 108, 576 S.E.2d 191, 195 (Ct.App.2003); *Corbin v. Kohler Co.,* 351 S.C. 613, 617, 571 S.E.2d 92, 95 (Ct.App.2002). "The mere possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence." *Olson,* 379 S.C. at 63, 663 S.E.2d at 501 (citing *DuRant v. S.C. Dep't of Health & Envtl. Control,* 361 S.C. 416, 420, 604 S.E.2d 704, 707 (Ct.App.2004)); *accord Palmetto Alliance, Inc. v. S.C. Pub. Serv. Comm'n,* 282 S.C. 430, 432, 319 S.E.2d 695, 696

(1984); *Tennis,* 355 S.C. at 558, 585 S.E.2d at 316; *Gattis,* 353 S.C. at 108, 576 S.E.2d at 195.

### *LAW/ANALYSIS*

The DMV avers the ALC judge committed error by reversing the Senior Hearing Officer's denial of Blue Ribbon's self-insurance application. The DMV maintains Section 56–9–60 grants the department discretion to deny self-insurer status to applicants with the apparent inability to satisfy any potential adverse judgments. We disagree.

The relevant statute, Section 56–9–60(A), directs:

(A) A person or company who has more than twenty-five motor vehicles registered in his name may qualify as a self-insurer provided that the department is satisfied that the person or company is able to pay any judgments obtained against the person or company. Upon not less than ten days' notice and a hearing pursuant to notice, the department may cancel self-insurer status when the requirements for the status no longer are met. The person or company must submit the following information to the department for it to determine financial responsibility:

(1) a copy of the applicant's latest financial statement prepared by a certified public accountant licensed to do business in South Carolina, indicating that the applicant has a positive net worth;

(2) a current list of all vehicles registered in applicant's name;

(3) the applicant's procedural guidelines for processing claims; and

(4) **the applicant must have a net worth of at least twenty million dollars or the department may require the applicant to deposit in a segregated self-insured claims account the sum of three thousand dollars for each vehicle to be covered by the self-insurer's certificate.** Eighty percent must be cash or an irrevocable letter of credit issued by a bank chartered in this State or a member bank of the federal reserve system, and the remaining twenty percent may be satisfied by the "quick sale" appraised value of real estate located in the State, as certified by a licensed appraiser. The three thousand dollar

a vehicle amount may not decrease more than thirty percent in any given certificate year.

S.C.Code Ann. § 56–9–60(A) (Supp.2007) (emphasis added).

The central issue in the case at bar is whether Blue Ribbon met the statutory requirements to receive self-insurance status as required by the applicable law. The DMV does not contest Blue Ribbon complied with the requirements of the statute except for a single provision. The dispute centers on whether the limitations placed on Blue Ribbon's letter of credit constitute a failure to comply with Section 56–9–60(A)(4).

The principles of statutory construction offer guidance in interpreting the relevant legislation in this case. The cardinal rule of statutory interpretation is to ascertain and effectuate the legislature's intent. *In re Campbell,* 379 S.C. 593, 599–600, 666 S.E.2d 908, 911 (2008); *Howell v. United States Fid. & Guar. Ins. Co.,* 370 S.C. 505, 509, 636 S.E.2d 626, 628 (2006); *Bass v. Isochem,* 365 S.C. 454, 459, 617 S.E.2d 369, 377 (Ct.App.2005); *see also State v. Dingle,* 376 S.C. 643, 649, 659 S.E.2d 101, 105 (2008) ("In interpreting statutes, the Court looks to the plain meaning of the statute and the intent of the Legislature."). Legislative intent must prevail if it can be reasonably discovered in the language employed and that language must be construed in the light of the intended purpose of the statute. *McClanahan v. Richland County Council,* 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002); *State v. Morgan,* 352 S.C. 359, 365–366, 574 S.E.2d 203, 206 (Ct.App. 2002). The plain language of the statute is the principal guidepost in discerning the General Assembly's intent. *Cain v. Nationwide Prop. & Cas. Ins. Co.,* 378 S.C. 25, 30, 661 S.E.2d 349, 352 (2008); *Grinnell Corp. v. Wood,* 378 S.C. 458, 467, 663 S.E.2d 61, 66 (Ct.App.2008); *see also Peake v. S.C. Dep't of Motor Vehicles,* 375 S.C. 589, 597–598, 654 S.E.2d 284, 289 (Ct.App.2007) ("With any question regarding statutory construction and application, the court must always look to legislative intent as determined from the plain language of the statute.")

Clear and unambiguous statutes require no statutory construction and must be applied according to the literal meaning of their terminology. *State v. Sweat,* 379 S.C. 367, 375, 665

S.E.2d 645, 650 (Ct.App.2008); *Neal v. Brown,* 374 S.C. 641, 650, 649 S.E.2d 164, 168 (Ct.App.2007). Words in the statute should be given their plain and ordinary meaning without resulting to forced or subtle construction. *Auto Owners Ins. Co. v. Rollison,* 378 S.C. 600, 609, 663 S.E.2d 484, 488 (2008); *Sonoco Prods. Co. v. S.C. Dep't of Revenue,* 378 S.C. 385, 391, 662 S.E.2d 599, 602 (2008). When statutes address the same subject matter, they are *in pari material* and must be construed together, if possible, to produce a single, harmonious result. *Howell,* 370 S.C. at 509, 636 S.E.2d at 628; *Grant v. City of Folly Beach,* 346 S.C. 74, 79, 551 S.E.2d 229, 231 (2001); *Joiner ex. rel. Rivas v. Rivas,* 342 S.C. 102, 109, 536 S.E.2d 372, 375 (2000); *see also Foothills Brewing Concern, Inc. v. City of Greenville,* 377 S.C. 355, 363, 660 S.E.2d 264, 268 (2008) ("Moreover, '[a] statute should not be construed by concentrating on an isolated phrase.'"). " 'The legislature is presumed to have fully understood the meaning of the words used in a statute and, unless this meaning is vague or indefinite, intended to use them in their ordinary and common meaning or in their well-defined legal sense.' " *S.C. Coastal,* 669 S.E.2d 899, 2008 WL 4693075 at *7 (quoting *Pee v. AVM, Inc.,* 344 S.C. 162, 168, 543 S.E.2d 232, 235 (Ct.App.2001)); *accord Purdy v. Moise,* 223 S.C. 298, 304, 75 S.E.2d 605, 608 (1953); *Powers v. Fid. & Deposit Co. of Md.,* 180 S.C. 501, 509, 186 S.E. 523, 527 (1936); *see also Rorrer v. P.J. Club, Inc.,* 347 S.C. 560, 568, 556 S.E.2d 726, 730 (Ct.App.2001) ("[The Court] should consider not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statutes and the policy of the law.").

However, courts will reject an interpretation leading to an absurd result clearly unintended by the legislature. *Unisun Ins. Co. v. Schmidt,* 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000); *Miller v. Lawrence Robinson Trucking,* 333 S.C. 576, 582, 510 S.E.2d 431, 434 (Ct.App.1998); *see also Ray Bell Constr. Co. v. Sch. Dist. of Greenville County,* 331 S.C. 19, 26, 501 S.E.2d 725, 729 (1998) ("However plain the ordinary meaning of the words used in the statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature...."). In this situation, the true

purpose and intentions of the legislature will prevail over the literal import of the words. *Browning v. Hartvigsen,* 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992); *accord New York Times Co. v. Spartanburg County Sch. Dist. No. 7,* 374 S.C. 307, 310– 311, 649 S.E.2d 28, 30 (2007). "Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers." *TNS Mills, Inc. v. S.C. Dep't of Revenue,* 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998) (citing *Whiteside v. Cherokee County Sch. Dist. No. One,* 311 S.C. 335, 340, 428 S.E.2d 886, 888 (1993)); *accord Moon v. City of Greer,* 348 S.C. 184, 188, 558 S.E.2d 527, 529 (Ct.App.2002).

South Carolina courts have addressed legislative intent with respect to the self-insurer statute on several prior occasions. In *Southern Home Ins. Co. v. Burdette's Leasing Serv., Inc.,* 268 S.C. 472, 477, 234 S.E.2d 870, 872 (1977), our Supreme Court asseverated:

> The overall purpose of the [self-insurance statute] is to assure protection for the public for injuries and damages growing out of the negligent operation of motor vehicles on the roads of this State.
>
> . . .
>
> We think it was the intention of the legislature that a self-insurer provide the same protection to the public that a statutory liability policy provides. A self-insurer substitutes for an insurance policy **to the extent of the statutory policy requirements.**

(emphasis added).

In *Wright v. North Area Taxi, Inc.,* 337 S.C. 419, 423, 523 S.E.2d 472, 474 (Ct.App.1999), this Court instructed:

> Under South Carolina law, however, a company that has more than twenty-five motor vehicles registered in its name may be a self-insurer upon satisfying the statutory requirements. As a self-insurer, North Area Taxi, was required to provide the same minimum protections to the public as the minimum limits required by a statutory liability policy. Technically, a self-insurer is not an insurer at all; rather, a self-insurer provides a substitute for an insurance policy.

(citations omitted). In other decisions, South Carolina courts have required self-insurers to extend coverage to the extent

provided for by statutory liability policies in respect to Uninsured Motorist Coverage (UM). *See Wright v. Smallwood,* 308 S.C. 471, 419 S.E.2d 219 (1992) (requiring self-insured city to provide UM coverage to employee injured while driving city vehicle); *S.C. Elec. & Gas Co. v. Jeter,* 288 S.C. 432, 343 S.E.2d 47 (Ct.App.1986) (finding self-insured bus operator responsible for UM coverage of passenger injured in accident).

█ Juxtaposing the case law precedent and the plain language of Section 56–9–60, we find Blue Ribbon properly complied with the requirements for self-insurance status and affirm the decision of the ALC. Our courts have consistently held self-insurers are required to provide a substitute for an insurance policy to the extent of the statutory policy requirements. *See Southern Home Ins.,* 268 S.C. at 477, 234 S.E.2d at 872. Blue Ribbon complied with the requirements established by Section 56–9–60(A) and provided a segregated claims account in the form of a letter of credit containing the per vehicle sum mandated by the statute. The limiting language added to the letter of credit merely serves to ensure Blue Ribbon's substitute for a policy conforms to the statutory policy requirements ensconced in S.C.Code Ann. § 38–77–140 (Supp.2007) (Currently, minimum statutory policy limits are set at twenty-five thousand dollars for bodily injury to a single person in a single accident, fifty thousand dollars for bodily injury to two or more people in a single accident, and twenty-five thousand dollars for property damage resulting from a single accident. This statute has been amended subsequent to the drafting of the letter of credit addressed in this case).

█ The plain language of Section 56–9–60(A) requires the applicant to prove to the department that "the person or company is able to pay **any judgments obtained** ...." (emphasis added). However, the determination of what constitutes the ability to pay any judgment is derived from the statute as a whole and the relevant case law. Our courts have concluded the legislature intended for self-insurers to conform to the statutory policy requirements. A literal reading of the "any judgments obtained" clause would be inconsistent with case law precedent and would lead to an absurd result clearly unintended by the legislature. This interpretation would allow the DMV exceedingly broad discretion to deny applicants who were unable to satisfy hypothetical judgments far greater

than the statutory policy requirements necessary for other insured motorists. Therefore, Section 56–9–60 must be interpreted in conjunction with the minimum statutory policy requirements of Section 38–77–140. We find this to be the correct figure to look to when determining whether an applicant has the capacity to satisfy any adverse judgments.

Section 56–9–60 establishes four prongs to be followed by the DMV in determining the financial responsibility of the company. *See* S.C.Code Ann. § 56–9–60(A)(1)–(4). Blue Ribbon complied with all of these necessary qualifications. The limiting language in the letter of credit conformed with the statutory policy requirements mandated by Section 38–77–140. Therefore, Blue Ribbon's letter of credit satisfied all statutory prerequisites and the application for the Self–Insurance Certificate should have been granted.

## *CONCLUSION*

Based on the foregoing, the order of the Honorable John D. McLeod, Administrative Law Judge, is

**AFFIRMED.**

HUFF and THOMAS, JJ., concur.