693 S.E.2d 13

**SIERRA CLUB, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and Chem–Nuclear Systems, LLC, Respondents.**

No. 4654.

Court of Appeals of South Carolina.

Heard Nov. 21, 2009.
Decided March 10, 2010.
Rehearing Denied May 3, 2010.

See also, 374 S.C. 201, 648 S.E.2d 601.

426

James S. Chandler, Jr., and Amy E. Armstrong, both of Pawleys Island, for Appellant.

Elizabeth M. Crum, Jacquelyn Sue Dickman, Sara S. Rogers, all of Columbia, Evander Whitehead, of North Charleston, and Mary D. Shahid, of Charleston, for Respondents.

LOCKEMY, J.

The Sierra Club appeals the Administrative Law Court's (ALC) determination that it failed to present sufficient evidence to warrant a revocation of Chem–Nuclear's license renewal. This case involves whether Chem–Nuclear was in compliance with certain Department of Health and Environmental Control (DHEC) regulations. Specifically, the Sierra Club argues Chem–Nuclear's current disposal practices fail to comply with section 7.11, concerning engineered barriers, of regulation 61–63 (Supp.2009). Additionally, the Sierra Club maintains Chem–Nuclear's current disposal practices fail to comply with section 7.23.6, concerning separating water from waste, of regulation 61–63 (1992). Finally, the Sierra Club maintains Chem–Nuclear failed to comply with all requirements set forth in section 7.10 of regulation 61–63 (Supp.2009). The ALC did not rule on whether Chem–Nuclear was in compliance with section 7.11, 7.23.6, and all requirements of 7.10; accordingly, we cannot review whether the ALC erred. The ALC found the Sierra Club failed to present sufficient evidence that established Chem–Nuclear was not in compliance with sections 7.10.1, 7.10.2, 7.10.3, and 7.10.4 and found the Sierra Club failed to present evidence demonstrating Chem–Nuclear violated section 7.18 and the ALARA test. We find there is sufficient evidence in the record to support these findings and affirm. However, we remand this case to the ALC for a ruling on whether Chem–Nuclear's current waste disposal practices are in compliance with sections 7.11, 7.23.6, and 7.10.5–7.10.10 of regulation 61–63.

## BACKGROUND

South Carolina is an agreement state for the disposal of low-level radioactive waste (LLRW) under the United States Atomic Energy Act. 42 U.S.C § 2021 (2005). In 1969, South Carolina became an agreement state after it enacted the Atomic Energy and Radiation Control Act, codified in sections 13–7–10 through 13–7–460 of the South Carolina Code (Supp. 2009). Federal and state laws require LLRW disposal facili-

ties be located on state-owned land. 24A S.C.Code Reg. 61–63, § 7.27.1 (1992). In accordance with section 7.27.1, Chem–Nuclear leases the land from the state for a term of ninety-nine years and is in the business of disposing LLRW at the Barnwell facility. Chem–Nuclear began disposal operations at the Barnwell site in 1971 pursuant to license number 97. Since 1971, Chem–Nuclear has been the only operator of the Barnwell facility, and prior to the present action, Chem–Nuclear renewed its license seven times. The Barnwell facility is licensed and overseen by South Carolina through DHEC. To continue operations at the Barnwell site, Chem–Nuclear must follow certain regulations.

## PROCEDURAL HISTORY

In 2000, Chem–Nuclear timely submitted its renewal application for license number 97 to DHEC. Thereafter, DHEC published a notice concerning a public hearing on the Chem–Nuclear renewal application. After holding a public hearing, on March 15, 2004, DHEC renewed Chem–Nuclear's license. The Sierra Club and Environmentalists, Inc., another environmental organization, challenged DHEC's decision to the ALC on April 1, 2004. Chem–Nuclear filed pre-trial motions for summary judgment, arguing the petitioners lacked standing because they could not prove an injury in fact from the continued operation of the disposal facility at the Barnwell plant. The ALC dismissed only Environmentalists, Inc., from the action for lack of standing and found the Sierra Club had standing.

Subsequently, the Sierra Club petitioned for administrative review and requested an adjudicatory hearing. In its petition, the Sierra Club challenged DHEC's decision and maintained the proposed license, as conditioned, failed to adequately protect public health, safety, and the environment. As conditioned, the Sierra Club argued DHEC authorized Chem–Nuclear to continue nuclear waste management and disposal practices at the Barnwell landfill that failed to maintain radiation releases to the public as low as reasonably achievable. The Sierra Club cited to federal and state statutes as well as to DHEC regulations in support of its assertion. Finally, the Sierra Club maintained its members would suffer injuries in fact in the form of lost property values and diminished health,

safety, and use and enjoyment of their property and natural resources.

On appeal, the ALC reviewed DHEC's decision de novo and noted the Sierra Club, as Petitioner, carried the burden of proving its case by a preponderance of the evidence. The ALC noted the requirements necessary for DHEC to issue a license by citing to regulation 61–63 of South Carolina Code of Regulations (Supp.2008). In particular, the ALC cited section 7.18 of regulation 61–63 which provides: "Reasonable efforts should be made to maintain releases of radioactivity in effluents to the general environment as low as is reasonably achievable (ALARA)."

Ultimately, the ALC found the Sierra Club failed to present evidence warranting the reversal of the renewal of license no. 97 based on section 7.10.1 of regulation 61–63, which requires that the issuance of the license not constitute an unreasonable risk to the health and safety of the public. Additionally, the ALC found the Sierra Club failed to present sufficient evidence to warrant the reversal of license number 97's renewal because Chem–Nuclear's disposal practices failed to satisfy the requirements of section 7.10.2 and 7.10.3 of the regulation 61–63. Third, the ALC found the Sierra Club failed to demonstrate that Chem–Nuclear's operations at the Barnwell Facility did not comply with section 7.10.4 of regulation 61–63, which addresses the protection of inadvertent intruders on the site. Finally, the ALC found the Sierra Club failed to show that Chem–Nuclear violated section 7.18 and the ALARA standard therein. The ALC ruled accordingly because Chem–Nuclear and DHEC demonstrated adherence to ALARA, as set forth in regulation 61–63, sections 3.4.2 and 7.18, by taking appropriate measures to address tritium migration from the Barnwell facility and the potential for releases from other radionuclides that are contained in the waste burial site.

However, the ALC found the Sierra Club raised legitimate issues and presented evidence suggesting further studies were needed to evaluate the scientific and economic feasibility of employing or implementing designs and operational procedures at the Barnwell site that will: (1.) shelter the disposal trenches from rainfall and prevent rainfall from entering the trenches; (2.) provide temporary dry storage facilities for the

storage of waste received during wet conditions; and (3.) provide for sealing and grouting the concrete disposal vaults to prevent the intrusion of water to the maximum extent feasible. In order to address these concerns, the ALC ordered Chem–Nuclear to conduct studies to address the concerns within 180 days.

Thereafter, the Sierra Club filed a motion to reconsider and to alter or amend the ALC's findings and conclusions. In its motion, the Sierra Club argued the ALC failed to address issues brought before the court. Additionally, the Sierra Club argued there were several inconsistencies between some of the findings and the conclusions. Specifically, the Sierra Club maintained there was a fundamental disconnect between the portion of the ALC's order that sustained the decision to renew Chem–Nuclear's license and the portion of the order that required Chem–Nuclear to conduct further studies. In its motion for reconsideration, the Sierra Club specifically mentioned sections 7.11 and 7.23.6 of regulation 61–63 and argued Chem–Nuclear's current disposal practices are not in compliance with these sections. The ALC did not specifically rule on the Sierra Club's motion but generally denied their motion for reconsideration.

The Sierra Club appealed the ALC's decision to the DHEC Board for review because prior appellate procedures were in effect. All parties expected the DHEC Board to review the ALC's decision at its July 2006 meeting; however, on July 1, 2006, the General Assembly amended the appeals procedures for permits and licenses issued by DHEC and other agencies. In order to determine the Act's effect on its case, Chem–Nuclear then filed a petition with the South Carolina Supreme Court. In response, our supreme court issued an opinion indicating the DHEC Board no longer had jurisdiction to hear the case and directed DHEC to transfer the appeal to this court. *Chem–Nuclear Sys., LLC v. S.C. Board of Health & Envtl. Control,* 374 S.C. 201, 648 S.E.2d 601 (2007). This appeal follows.

## STANDARD OF REVIEW

■ The standard of review for a court reviewing the decision of the ALC is set forth in the Administrative Proce-

dures Act. S.C.Code Ann. § 1–23–610 (Supp.2009). "The review of the administrative law judge's order must be confined to the record." § 1–23–610(B). Under section 1–23–610(B), our court may affirm or remand the case for further proceedings. Additionally, this court may reverse or modify the decision of the ALC if its findings, conclusions, or decisions are:

    (a) in violation of constitutional or statutory provisions;

    (b) in excess of the statutory authority of the agency;

    (c) made upon unlawful procedure;

    (d) affected by other error of law;

    (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

    (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

§ 1–23–610(B). The decision of the ALC should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law. *Original Blue Ribbon Taxi Corp. v. S.C. Dept. of Motor Vehicles,* 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct.App.2008). "Substantial evidence, when considering the record as a whole, would allow reasonable minds to reach the same conclusion as the [ALC] and is more than a mere scintilla of evidence." *Id.* at 605, 670 S.E.2d at 676.

## LAW/ANALYSIS

The Sierra Club argues Chem–Nuclear's landfill fails to comply with certain DHEC regulations that require the use of engineered barriers to isolate the wastes from water and the surrounding earth. Specifically, the Sierra Club contends Chem–Nuclear's landfill fails to meet the technical requirements of sections 7.10, 7.11, and 7.23.6 of regulation 61–63. In response, DHEC argues the ALC, in determining whether a license should be renewed, must apply the criteria set forth in section 7.10 of regulation 61–63 rather than apply criteria set forth in sections 7.11 and 7.23.6. Assuming sections 7.11 and 7.23.6 are applicable to Chem–Nuclear's license renewal, DHEC argues the Sierra Club failed to preserve these issues for review. Even if preserved, DHEC maintains the Sierra Club misapprehends the legislative intent of regulation 61–63.

We address each issue and sections 7.10, 7.11, and 7.23.6 in turn.

### I. Applicability of sections 7.11 and 7.23.6

■ As Chem–Nuclear and DHEC first argue, section 7.10 specifically applies to "Requirements for Issuance of a License." In contrast, the scope of section 7.11 applies to "Conditions of Licenses," while the scope of section 7.23 applies to "Disposal Site Design for Near–Surface Disposal." We find section 7.11 is an extension of section 7.10 as the Sierra Club argues. Furthermore, Chem–Nuclear is the only LLRW plant in the state, and it appears the scope of regulation applies broadly. *See* section 1.1 of regulation 61–63 (stating "[e]xcept as otherwise specifically provided, these regulations apply to all persons who receive, possess, use, transfer or acquire any radioactive material . . ."). Therefore, we believe Chem–Nuclear must be in compliance these regulations as a whole.

### II. Preservation

■ Next, Chem–Nuclear and DHEC argue the Sierra Club's first issue is not preserved for review. Specifically, the Respondents maintain the Sierra Club failed to raise RHA 7.11 or RHA 7.23 in its prehearing statement and never amended its prehearing statement to include the regulations at issue. In support of its assertion, Chem–Nuclear cites *McNeely v. South Carolina Farm Bureau Mutual Insurance Co.*, 259 S.C. 39, 190 S.E.2d 499 (1972). The only pertinent section of the *McNeely* opinion states: "The estoppel issue argued by appellant in his brief was not made by the pleadings nor raised in the exceptions. Accordingly that issue is not before this Court." *Id.* at 41, 190 S.E.2d at 499.

■ We do not find *McNeely*, an insurance case, persuasive. Specifically, we do not believe *McNeely* holds that, as a general rule, only those claims presented in a prehearing statement will be considered on appeal. Instead, we find the general preservation rule, that an issue must be raised to and ruled upon in order to be preserved for review, should apply. *See Brown v. S.C. Dep't. of Health & Envtl. Control*, 348 S.C. 507, 519, 560 S.E.2d 410, 417 (2002) ("[I]ssues not raised to

and ruled on by the AL[C] are not preserved for appellate consideration."). Therefore, we must determine whether this issue was properly before the ALC.

As Chem–Nuclear argues, the Sierra Club did not specifically mention section 7.11 or section 7.23.6 in its prehearing statement. However, the Sierra Club raised overall compliance with regulation 61–63 in its prehearing statement. Specifically, in its prehearing statement under "specific statutory and regulatory provisions giving rise to the controversy," the Sierra Club cites DHEC regulations 61–72 and 61–63. Additionally, in its prehearing statement, under "issues to be presented for determination, including any claims or defenses expected to be raised" the Sierra Club includes: "Whether the proposed renewal license would violate state and federal environmental law and regulations...." The Sierra Club then specifically mentions certain sections of the regulations. Accordingly, we construe these statements broadly to include the applicable sections of regulation 61–63.

█ Furthermore, we believe the Sierra Club overcame the "ruled upon" requirement for preservation. Here, the Sierra Club submitted a post-trial motion requesting the ALC rule on these issues which the ALC generally denied without addressing specific issues. Pursuant to Rule 40 of the South Carolina Administrative Law Court (2009): "Issues raised on appeal but not addressed in the [final] order are deemed denied." Therefore, under the current version of the Administrative Law Rules, because these issues are deemed "denied" they satisfy the "ruled upon" preservation requirement. *See id.*

As additional support for the "ruled upon" preservation requirement, we look to *Pye v. Fox,* 369 S.C. 555, 633 S.E.2d 505 (2006). In *Pye,* the South Carolina Supreme Court identified a ruling by a trial court or a post-trial motion as the two ways to preserve an issue for appeal. 369 S.C. at 566, 633 S.E.2d at 511. The *Pye* court held an issue was preserved for review when *Pye* raised such issue to the trial court through a Rule 59(e) motion. 369 S.C. at 565, 633 S.E.2d at 510. Though the trial court never ruled on the issue the motions raised, the *Pye* court found the issue was preserved by stating: "[A]n exception to this rule exists where an issue *is raised* but *not ruled upon* at a Rule 59(e) hearing." *Id.*

(emphasis in original). In its holding, the court noted lawyers cannot force trial courts to address an issue, and a proper Rule 59 request is sufficient without a specific judicial decision on the issue. *Id.* at 566, 633 S.E.2d at 511. Therefore, because the Sierra Club properly filed a Rule 59(e) motion with the ALC, we believe these issues are preserved even though the ALC did not specifically rule on them.[1]

## III. Issues on the Merits

### a. Section 7.11 Regarding Engineered Barriers

█ The Sierra Club's first main argument is that Chem–Nuclear's current disposal practices fail to comply with the technical requirements of section 7.11 of regulation 61–63. Specifically, section 7.11.9 requires Chem–Nuclear to "incorporate engineered barriers for all waste classifications. The engineered barriers shall be designed and constructed to complement and improve the ability of the disposal facility to meet the performance objectives in this part." Additionally, section 7.11.10 states:

> The engineered barriers shall be designed and constructed of materials having physical and chemical properties so as to provide reasonable assurance that the barriers will maintain their functional integrity under all foreseeable conditions for at least the institutional control period. No reliance may be placed on the engineered barriers beyond the institutional control period.

Furthermore, pursuant to section 7.11.11 through 7.11.11.7, Chem–Nuclear's disposal practices are required to be designed to meet the following objectives:

> (1.) to minimize the migration of water onto the disposal units.

> (2.) to minimize the migration of waste or waste contaminated water out of the disposal units.

> (3.) detection of water and other liquids in the disposal units.

---

1. We note the South Carolina Supreme Court recently found Rule 59(e) applicable to ALC actions. *See Home Med'l Sys., Inc. v. S.C. Dept. of Revenue,* 382 S.C. 556, 562–63, 677 S.E.2d 582, 586 (2009).

(4.) temporary collection and retention of water and other liquids for a time sufficient to allow for the detection and removal or other remedial measures without the contamination of groundwater or the surrounding soil.

(5.) facilitation of remedial methods without disturbing other disposal units.

(6.) reasonable assurance that the waste will be isolated for at least the institutional control period.

(7.) prevention of contact between the waste and the surrounding earth, except for earthen materials which may be used for backfilling within the disposal units.

The Sierra Club contends the ALC's factual findings establish that Chem–Nuclear's landfill fails to comply with section seven. Specifically, the Sierra Club argues "the landfill design fails to achieve the 'isolation of wastes from the biosphere inhabited by man and his food chains' and fails to meet the technical requirements of section 7.10 and 7.11." In particular, the Sierra Club argues the engineered barriers do not: (1.) minimize the migration of water into the disposal units; (2.) minimize the migration of waste or waste contaminated water out of the disposal units; (3.) provide for the detection of water and other liquids in the disposal units; (4.) provide for the temporary collection and retention of water and other liquids for a time sufficient to allow for the detection and removal or other remedial measures without the contamination of groundwater or the surrounding soil; and (5.) prevent the contact between the waste and the surrounding earth.

We remand this issue to the ALC and instruct it to apply its factual findings to the technical requirements of these regulations. Specifically, we believe section 7.11 imposes additional compliance requirements for Chem–Nuclear such that the balancing test of ALARA would not be sufficient to addresses whether Chem–Nuclear is in compliance with section 7.11. We cannot determine whether the ALC erred without a specific ruling. Accordingly, we find it proper to first give the ALC an opportunity to rule on whether Chem–Nuclear was in compliance with section 7.11.

#### b. Section 7.23 Regarding Contact of Water and Waste

The Sierra Club's second main argument is that Chem–Nuclear's disposal practices fail to comply with section 7.23.6 of regulation 61–63. Specifically, section 7.23.6 states: "The

disposal site shall be designed to minimize to the extent practicable the contact of water with waste during storage, the contact of standing water with waste during disposal, and the contact of percolating or standing water with wastes after disposal." The Sierra Club argues Chem–Nuclear is in violation of section 7.23.6 because its landfill is not designed to minimize the contact of water with waste during storage, the contact of standing water with waste during disposal, and the contact of percolating or standing water with wastes after disposal. The Sierra Club expressed serious concern regarding several of Chem–Nuclear's vaults and trenches that have no cover or roof such that rain can fall directly into the vault. The ALC also noted the rainfall problem and stated: "The problems caused by rainfall are compounded . . . and [r]ainfall that accumulates in the trenches eventually percolates into the soil, and drives the groundwater movement that is carrying tritium and other radioactive materials into Mary's Branch Creek."

We also remand this issue to the ALC with specific instructions to apply its factual findings to the technical requirements of section 7.23.6. We find section 7.23.6 imposes additional compliance requirements for Chem–Nuclear. Without a specific ruling, we cannot determine whether the ALC erred. Accordingly, we remand the issue to the ALC to give it opportunity to rule on whether Chem–Nuclear was in compliance with section 7.23.6.

### c. Section 7.10 and "ALARA"

■ The Sierra Club also argues section 7.10 of regulations 61–63 requires Chem–Nuclear to comply with ten directives. The Sierra Club argues at length that Chem–Nuclear is required to comply with all subsections of section 7.10 based on the conjunction "and" at the end of subsection 7.10.8. Specifically, section 7.10 states:

7.10.1 The issuance of the license will not constitute an unreasonable risk to the health and safety of the public;

7.10.2 The applicant is qualified by reason of training and experience to carry out the disposal operations requested in a manner that protects health and minimizes danger to life or property;

7.10.3 The applicant's proposed disposal site, disposal design, land disposal facility operations, including equipment,

facilities, and procedures, disposal site closure, and postclosure institutional control are adequate to protect the public health and safety in that they provide reasonable assurance that the general population will be protected from releases of radioactivity *as specified in the performance objective in 7.18;*

7.10.4   The applicant's proposed disposal site, disposal site design, land disposal facility operations, including equipment, facilities, and procedures, disposal site closure, and postclosure institutional control are adequate to protect the public health and safety in that they will provide reasonable assurance that individual inadvertent intruders are protected in accordance with the performance objective in 7.19;

7.10.5   The applicant's proposed land disposal facility operations, including equipment, facilities, and procedures, are adequate to protect the public health and safety in that they will provide reasonable assurance that the standards for radiation protection set out in Part III of these regulations will be met;

7.10.6   The applicant's proposed disposal site, disposal site design, land disposal facility operations, disposal site closure, and postclosure institutional control are adequate to protect the public health and safety in that they will provide reasonable assurance that long-term stability of the disposed waste and the disposal site will be achieved and will eliminate to the extent practicable the need for ongoing active maintenance of the disposal site following closure;

7.10.7   The applicant's demonstration provides reasonable assurance that the applicable technical requirements of this part will be met;

7.10.8   The applicant's proposal for institutional control provides reasonable assurance that such control will be provided for the length of time found necessary to ensure the findings in 7.10.3 through 7.10.6 and that the institutional control meets the requirements of 7.27;  and

7.10.9   The financial or surety arrangements meet the requirements of this part.

7.10.10   The applicant's Quality Assurance Plan describing the methods and procedures used to ensure that the disposal units are constructed in accordance with the approved designs and applicable standards and that the waste com-

plies with the requirements of this regulation and the license. (emphasis added).

Section 7.18 states:

Concentrations of radioactive material which may be released to the general environment in groundwater, surface water, air, soil, plants, or animals shall not result in an annual dose exceeding an equivalent of 25 millirems (0.25 mSv) to the whole body, 75 millirems (0.75 mSv) to the thyroid, and 25 millirems (0.25 mSv) to any other organ of any member of the public. Reasonable effort should be made to maintain releases of radioactivity in effluents to the general environment *as low as is reasonably achievable.* (emphasis added).

Section 3.2.6 defines "as low as is reasonably achievable" as:

[M]aking every reasonable effort to maintain exposures to radiation as far below the dose limits in this part as is practical consistent with the purpose for which the licensed activity is undertaken, taking into account the state of technology, the economics of improvements in relation to state of technology, the economics of improvements in relation to benefits to the public health and safety, and other societal and socioeconomic considerations, and in relation to utilization of nuclear energy and licensed materials in the public interest.

■ In considering the above mentioned sections of regulation 61–63, the ALC found the Sierra Club failed to present sufficient evidence that established Chem–Nuclear was not in compliance with sections 7.10.1, 7.10.2, 7.10.3, and 7.10.4. Additionally, the ALC found the Sierra Club failed to present evidence demonstrating Chem–Nuclear violated section 7.18 and the ALARA test. On the issues the ALC addressed, specifically the first four subsections of section 7.10, we affirm and give deference to the ALC's findings. For the subsections the ALC failed to address, specifically the remaining subsections of 7.10, we remand these questions to the ALC for a final determination as to whether Chem–Nuclear was in compliance with the entirety of 7.10.

## CONCLUSION

In considering this appeal, we first find that sections 7.11 and 7.23.6 of regulation 61–63 apply to the present action and

require Chem–Nuclear to comply with additional directives. Secondly, we hold these compliance issues are preserved for our review and believe the Sierra Club overcame the "raised to" and "ruled upon" preservation requirements. Having reasoned that sections 7.11 and 7.23.6 apply to the issues at hand and further having decided that the Sierra Club's issues are preserved for our review, we remand this case to the ALC. At this point, we cannot address whether the ALC erred without giving it an opportunity to issue a specific ruling on whether Chem–Nuclear's disposal practices were in compliance with sections 7.11, 7.23.6 and subsections of 7.10 that the ALC did not address. On remand, we instruct the ALC that sections 7.11 and 7.23.6 impose additional compliance requirements for Chem–Nuclear and further instruct the ALC to apply its factual findings to these sections of regulation 61–63. We affirm the ALC's decision that the Sierra Club failed to present sufficient evidence that established Chem–Nuclear was not in compliance with sections 7.10.1, 7.10.2, 7.10.3, and 7.10.4 as well as its finding that the Sierra Club failed to present evidence demonstrating Chem–Nuclear violated section 7.18 and the ALARA test. Accordingly, the decision of the ALC is

**AFFIRMED IN PART AND REMANDED IN PART.**

HEARN, C.J., and CURETON A.J., concur.