**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Dish DBS Corporation, f/k/a EchoStar, DBS Corp., and Affiliates, Appellant,

v.

South Carolina Department of Revenue, Respondent.

Appellate Case No. 2016-001642

Appeal From The Administrative Law Court
Shirley C. Robinson, Administrative Law Judge

Unpublished Opinion No. 2018-UP-404
Heard September 19, 2018 – Filed October 31, 2018

**AFFIRMED**

Burnet Rhett Maybank, III and James Peter Rourke, both of Nexsen Pruet, LLC, of Columbia, for Appellant.

William J. Condon, Jr., Nicole Martin Wooten, and Jason Phillip Luther, all of the South Carolina Department of Revenue, of Columbia, for Respondent.

Charles T. Speth II, of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and Steve A. Matthews, of Haynsworth Sinkler Boyd, P.A., both of Columbia, for the Amicus South Carolina Chamber of Commerce.

**PER CURIAM:** In this appeal from the Administrative Law Court (ALC), Dish DBS Corporation (Dish DBS) argues the ALC erred in (1) not excluding the expert testimony of Dr. Glenn Harrison, (2) finding South Carolina is not a pro rata cost of performance state and adopting a market share approach for apportioning multi-state income for corporate tax purposes, (3) disregarding Dish DBS's income producing activities (IPAs), and (4) upholding the imposition of substantial understatement penalties on Dish DBS. We affirm.

## I. STANDARD OF REVIEW

An appellate court may only reverse the ALC's order if it is unsupported by substantial evidence in the record or contains an error of law. *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles*, 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct. App. 2008). "Substantial evidence is not a mere scintilla of evidence nor evidence viewed blindly from one side, but is evidence [that], when considering the record as a whole, would allow reasonable minds to reach the conclusion that the agency reached . . . ." *Leventis v. S.C. Dep't of Health & Envtl. Control*, 340 S.C. 118, 130, 530 S.E.2d 643, 650 (Ct. App. 2000) (quoting *Welch Moving & Storage Co. v. Pub. Serv. Comm'n of S.C.*, 301 S.C. 259, 261, 391 S.E.2d 556, 557 (1990)). "However, '[q]uestions of statutory interpretation are questions of law, which [the appellate court is] free to decide without any deference to the court below.'" *Centex Int'l, Inc. v. S.C. Dep't of Revenue*, 406 S.C. 132, 139, 750 S.E.2d 65, 69 (2013) (first alteration in original) (quoting *CFRE, LLC v. Greenville Cty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011)).

## II. QUALIFICATION OF EXPERT WITNESS

Dish DBS argues the ALC erred in not excluding the expert testimony of Dr. Harrison because he did not have the "requisite skill or knowledge" to testify as an expert in the area of state income tax apportionment and he "admitted no economic publications supported his testimony." We disagree.

We find the ALC did not abuse its discretion by admitting Dr. Harrison's testimony. *See Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 252, 487 S.E.2d 596, 598 (1997) ("The qualification of an expert witness and the admissibility of the expert's testimony are matters within the trial court's discretion."); *see also Watson v. Ford Motor Co.*, 389 S.C. 434, 446, 699 S.E.2d 169, 175 (2010) (providing before allowing expert testimony, the trial court must (1) "find that the subject matter is

beyond the ordinary knowledge of the [trier of fact]," (2) "find that the proffered expert has indeed acquired the requisite knowledge and skill to qualify as an expert in the particular subject matter," and (3) "evaluate the substance of the testimony and determine whether it is reliable"). First, neither party disputes the subject matter of this case—the determination of how South Carolina apportions income for multi-state corporate income tax purposes and determining Dish DBS's IPAs—is "beyond the ordinary knowledge of the [trier of fact]."

Second, Dr. Harrison was qualified to testify as an expert in applied economics because he teaches and researches in the area of applied economics; a majority of his courses deal with applied economics; and most of his publications are about or use applied economics. SCDOR offered and the ALC admitted Dr. Harrison as an expert in the general field of applied economics, not as an expert in state income tax apportionment or IPAs. Dr. Harrison testified as to how economists distinguish between intermediate inputs and final products and how economists look at a company's 10-K filings. He opined Dish DBS's final product was "the provision of pay TV services . . . that are provided by the box that's in . . . South Carolina," and stated Dish DBS's other activities were intermediate inputs. He explained he based this testimony on economic principles. Dr. Harrison never provided a legal definition of IPAs, nor did he attempt to interpret the statutes at issue. Instead, his testimony solely focused on determining—from an economics standpoint—when, where, and how Dish DBS received its revenue. Because Dr. Harrison did not attempt to interpret the statutes or define IPAs as provided in the statute, and his testimony focused on applying economic principles to the case at issue, we find the ALC acted within its discretion in finding Dr. Harrison had the skill and knowledge to qualify as an expert in applied economics. *See Watson*, at 447, 699 S.E.2d at 176 ("The test for qualification of an expert is a relative one that is dependent on the particular witness's reference to the subject.").

Third, the subject matter of Dr. Harrison's testimony was reliable. Dr. Harrison admitted IPA is a legal term not used in economics. However, he stated economics deals with income, revenue, and costs and cited to two economic textbooks as examples. He also stated the concepts of intermediate inputs and final products were discussed in economic publications, including his own. Because the concepts discussed and applied by Dr. Harrison are general economic principles that appear in textbooks and peer reviewed sources, we find the subject matter of Dr. Harrison's testimony was reliable.

Last, to the extent Dish DBS objected to the relevancy of Dr. Harrison's discussion of the economic reasonableness of the apportionment statutes, we find Dish DBS

may not object to this testimony because it questioned Dr. Harrison about economic reasonableness, not SCDOR. *See Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 476, 629 S.E.2d 653, 670 (2006) ("[A] party may not complain on appeal of error or object to a trial procedure which his own conduct has induced."). Accordingly, the ALC did not abuse its discretion in admitting Dr. Harrison's testimony, and we affirm as to this issue.

## III. APPORTIONMENT OF MULTI-STATE INCOME

Dish DBS argues the ALC erred in holding South Carolina is not a pro rata cost of performance state and adopting a market share approach. We disagree.

First, we find the ALC correctly determined that South Carolina is not a pro rata cost of performance state. A service provider attributes its receipts to South Carolina for South Carolina income tax purposes based on the extent its IPAs are performed in this state. *See* S.C. Code Ann. § 12-6-2290 (2014) ("[T]he taxpayer shall apportion its remaining net income using a fraction in which the numerator is gross receipts from within this State during the taxable year and the denominator is total gross receipts from everywhere during the taxable year. For purposes of this section, items included in gross receipts are as provided in [s]ection 12-6-2295 [of the South Carolina Code (2014)]."); § 12-6-2295(A)(5) ("[R]eceipts from services if the entire [IPA] is within this State. If the [IPA] is performed partly within and partly without this State, sales are attributable to this State to the extent the [IPA] is performed within this State."). This language is similar to the language used by the Uniform Division of Income for Tax Purposes Act (UDITPA); however, the South Carolina legislature specifically excluded the cost of performance language found in the UDITPA when drafting the South Carolina statutes. *See* UDITPA § 17 (Supp. 2013) ("Sales, other than sales of tangible personal property, are in this state if: (a) the [IPA] is performed in this state; or (b) the [IPA] is performed both in and outside this state *and a greater proportion of the [IPA] is performed in this state than in any other state, based on costs of performance.*" (emphasis added)). This indicated the legislature's intent that the apportionment of receipts attributable to South Carolina not be based on costs of performance. *See Hodges v. Rainey*, 341 S.C. 79, 87, 533 S.E.2d 578, 582 (2000) ("When the language of a statute is clear and explicit, a court cannot rewrite the statute and inject matters into it which are not in the legislature's language, and there is no need to resort to statutory interpretation or legislative intent to determine its meaning."); *id.* at 85, 533 S.E.2d at 581 ("What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the

legislature." (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed. 1992))).

Additionally, Dish DBS points to the Hellerstein Treatise[1] and the *South Carolina Income Tax Manual* as evidence that South Carolina is a pro rata cost of performance state. However, Professor John Swain, a coauthor of the Hellerstein Treatise, testified the treatise did not declare or make South Carolina a pro rata cost of performance state. Additionally, the *South Carolina Income Tax Manual* states South Carolina is neither a cost of performance nor a market share state. Furthermore, Dish DBS's reliance on *Lockwood Greene Engineers, Inc. v. South Carolina Tax Commission*, 293 S.C. 447, 448–49, 361 S.E.2d 346, 347 (Ct. App. 1987), and *Rent-A-Center Texas v. South Carolina Department of Revenue*, Docket No. 09-ALJ-17-0206-CC at 8-10 (filed January 6, 2012), is unfounded because the nature of the taxpayers' businesses in those cases differ from the nature of Dish DBS's business. *See DIRECTV, Inc. & Subsidiaries v. S.C. Dep't of Revenue*, 421 S.C. 59, 71, 804 S.E.2d 633, 639 (Ct. App. 2017) ("In South Carolina, the nature of the taxpayer's business in the state determines the method of apportionment a taxpayer must use."), *cert. denied,* S.C. Sup. Ct. Order dated May 2, 2018. Accordingly, we find the ALC correctly found South Carolina is not a pro rata cost of performance state.

Second, we find the ALC did not adopt a market share approach. The ALC repeatedly stated South Carolina is not a market share state and found South Carolina instead "provides a flexible standard based upon the [IPA] for a given industry." Furthermore, as noted by experts for both SCDOR and Dish DBS, the IPA approach used by SCDOR and affirmed by the ALC would not result in a market share approach for every taxpayer. Finally, Dish DBS argues affirming the ALC's decision would "radically change[] the taxation of domestic (South Carolina) service providers in this state," and that this apportionment scheme may ultimately result in South Carolina receiving less taxes from other businesses. This policy debate is for the legislature, not this court. Accordingly, we affirm as to these issues.

## IV. INCOME PRODUCING ACTIVITIES

Dish DBS argues the ALC erred in adopting SCDOR's theory that the delivery of the satellite signal into the subscriber's home is Dish DBS's only IPA and disregarding its other IPAs, including programming, satellites and uplink, advertising, subscriber equipment, installation, and call centers. We disagree.

---

[1] Jerome R. Hellerstein et al., *State Taxation* (3rd ed. 1999).

Substantial evidence supports the ALC's finding Dish DBS's IPA is the delivery of its satellite signal to its subscribers, and the delivery of signal to South Carolina subscribers is best represented by its South Carolina subscription receipts. *See Original Blue Ribbon Taxi Corp.*, 380 S.C. at 604, 670 S.E.2d at 676 (providing an appellate court should only reverse the ALC's order if it is unsupported by substantial evidence in the record or contains an error of law); *DIRECTV, Inc.*, 421 S.C. at 77, 804 S.E.2d at 642 (finding DIRECTV's IPA was "the delivery of its programming signal to its customers," and that "the fees paid by South Carolina subscribers for the lease and purchase of DIRECTV's equipment and the delivery of the signal to the subscribers represent the extent of the IPAs occurring in South Carolina; reasonably represent DIRECTV's business activity in South Carolina; and are to be included in the numerator of the gross receipts ratio for DIRECTV"). Dr. Harrison testified Dish DBS generated its income when it delivered the television signal to the subscriber's set-top box and that Dish DBS's other activities were only intermediate inputs. Dr. Harrison also stated subscription receipts were the most accurate way to measure Dish DBS's income generating activity in South Carolina. Accordingly, we affirm as to this issue.

## V. SUBSTANTIAL UNDERSTATEMENT PENALTIES

Dish DBS states it had substantial authority for the positions it took on its tax returns based on its "well reasoned construction" of the apportionment statutes and numerous cases and guidance from other jurisdictions. Dish DBS also asserts it had reasonable cause and acted in good faith in filing its tax returns because no regulations or policies instructed it to file its returns using the market share approach and several national commentators had stated South Carolina was a pro rata cost of performance state.

We understand Dish DBS's position, but we also understand and must follow our narrow standard of review. Under the substantial evidence measure, even if we might have decided the issue differently, we must affirm the ALC's decision as long as substantial evidence supports it. We find the ALC had substantial evidence to find Dish DBS had no substantial authority or reasonable cause for its use of a pro rata cost of performance-based approximation in its tax returns because (1) section 12-6-2295 does not include cost of performance language, (2) Dish DBS's reliance on *Lockwood Greene* and *Rent-A-Center Texas* was unfounded as the nature of the taxpayer's businesses in these cases differed from the nature of Dish DBS's business, (3) the *South Carolina Income Tax Manual* referred to by Dish DBS states South Carolina is not a cost of performance state, and (4) Professor Swain, a coauthor of

the Hellerstein Treatise, stated the treatise did not declare or make South Carolina a pro rata cost of performance state. *See* S.C. Code Ann. § 12-54-155(B)(2)(b) (2014) ("The amount of the understatement . . . must be reduced by that portion of the understatement which is attributable to the tax treatment of an item: (i) by the taxpayer if there is or was substantial authority for that treatment . . . ."); *id.* (providing for the purposes of section 12-54-155, substantial authority is defined "in accordance with Treasury Regulation Section 1.6662-4 . . ."); Treas. Reg. § 1.6662-4(d)(2) (2018) ("The substantial authority standard is an objective standard involving an analysis of the law and application of the law to relevant facts. The substantial authority standard is less stringent than the more likely than not standard (the standard that is met when there is a greater than 50-percent likelihood of the position being upheld), but more stringent than the reasonable basis standard . . . ."); S.C. Code Ann. § 12-54-155(D)(1) (2014) ("A penalty must not be imposed pursuant to this section with respect to a portion of an underpayment if it is shown that there was a reasonable cause for the portion *and* that the taxpayer acted in good faith with respect to the portion." (emphasis added)); § 12-6-2295(A)(5) (providing gross receipts includes "receipts from services if the entire [IPA] is within this State. If the [IPA] is performed partly within and partly without this State, sales are attributable to this State to the extent the [IPA] is performed within this State."); *Lockwood Greene*, 293 S.C. at 448, 361 S.E.2d at 347 (involving an engineering firm that provided its clients a service from which it derived its income by offering the time and expertise of highly trained engineers and personnel); *Rent-A-Center Tex.*, Docket No. 09-ALJ-0206-CC (involving a company that derived its income by providing management services, which were performed by professionals in Texas). Further, although Dish DBS relied on the Hellerstein Treatise, which states "two knowledgeable observers" have viewed South Carolina as a cost of performance state, conclusions reached in treatises are not authority for purposes of substantial authority. *See* Treas. Reg. § 1.6662-4(d)(3)(iii) ("Conclusions reached in treatises, legal periodicals, legal opinions or opinions rendered by tax professionals are not authority."); *see also Stobie Creek Invs., LLC v. United States*, 82 Fed. Cl. 636, 707 (2008), *aff'd*, 608 F.3d 1366 (Fed. Cir. 2010). Accordingly, we affirm as to this issue.

**AFFIRMED.**

**KONDUROS, MCDONALD, and HILL, JJ., concur.**